[No. S030266. July 28, 1994.]

In re TYRELL J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
TYRELL J., Defendant and Appellant.

## COUNSEL

Carol A. Navone, under appointment by the Supreme Court, for Defendant and Appellant.

Stuart R. Rappaport, Public Defender (Santa Clara) and Stephen B. Elrick, Deputy Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger, Thomas Y. Shigemoto and Joel Carey, Deputy Attorneys General, for Plaintiff and Respondent.

Gil Garcetti, District Attorney (Los Angeles), George M. Palmer and Brentford J. Ferreira, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

LUCAS, C. J.—In this case, we confront a question on which the lower courts are divided: When a police officer conducts an otherwise illegal

search of a minor, may the fruits of the search be properly admitted into evidence against the minor if the minor was subject to a probation search condition of which the officer was unaware? As we explain, we conclude that because the minor was subject to a valid condition of probation that required him to submit to warrantless searches by "any" law enforcement officer, he had no reasonable expectation of privacy over a cache of marijuana in his pants. Consequently, the search of his person was not unconstitutional despite the officer's ignorance of the search condition. We therefore reverse the decision of the Court of Appeal, which reached a contrary decision.

FACTS

On May 21, 1991, appellant Tyrell J. (hereafter sometimes the minor) was declared a ward of the court for his commission of a battery on school grounds, a misdemeanor. He was placed on probation subject to a variety of conditions, including that he "[s]ubmit to a search of [his] person and property, with or without a warrant, by any law enforcement officer, probation officer or school official."

On the evening of October 3, 1991, Officer Douglas Villemin, a member of the Fresno Police Department juvenile tactical team, was in uniform and on patrol at McLane Stadium, where a football game was in progress between Bullard High School and Roosevelt High School. Also at the game were Detectives Stanfield and Berry of the Fresno Police Department. Villemin was aware that the week before, at a game between Bullard and Edison High Schools, there was a shooting incident involving two local gangs, the "6 Deuce Diamond Crips" and the "U-Boys."

The minor and two male friends were in the stadium and approached Officer Villemin. Detective Berry informed Villemin that all three young men were members of the U-Boys gang. Villemin noticed that although the temperature exceeded 80 degrees that evening, one of the minor's friends was wearing a heavy, quilted coat. Villemin and Stanfield approached the trio and asked them to "hold up." Stanfield pulled away the heavy coat and saw a large hunting knife. The officers then asked all 3 to walk to a fence about 15 to 20 feet away. They complied.

As the minor walked toward the fence, Officer Villemin observed the minor (whose back was to Villemin) adjust his trousers three times in the area of his crotch. Villemin suspected the minor was trying to move or recover a weapon. On arriving at the fence, Villemin conducted a pat-search of the minor, including the minor's crotch area. Villemin noticed the minor's

pants were unbuttoned and partially unzipped. In addition, Villemin felt a soft object approximately three inches in diameter and twelve inches long; the major part of the object protruded from the minor's pants. Although Villemin did not believe the object was a weapon, he retrieved it and determined it was a bag of marijuana.

A petition was filed alleging the minor was a person coming within the provisions of Welfare and Institutions Code section 602, in that he possessed marijuana for the purpose of sale (Health & Saf. Code, § 11359). The minor denied the allegation and moved to suppress the evidence of the marijuana. (Welf. & Inst. Code, § 700.1.) At the hearing on the motion, the minor testified and stated his belt and pants had become undone, and when he and his friends were confronted by police, he was merely trying to refasten his pants. Officer Villemin testified he was unaware of the minor's search condition at the time he searched him. The juvenile court referee denied the suppression motion and the minor was declared a ward of the court.

On appeal, the Court of Appeal reversed. The court found it was undisputed that Officer Villemin lacked probable cause to search the minor,[1] and reasoned that the fortuity of the search condition did not validate the otherwise improper search. We thereafter granted the People's petition for review.

DISCUSSION

A. *Introduction*

We begin with some basic propositions. ■ The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures by police officers and other government officials. (*New Jersey* v. *T.L.O.* (1985) 469 U.S. 325, 335 [83 L.Ed.2d 720, 730-731, 105 S.Ct. 733].) This constitutional proscription is enforced by an exclusionary rule, generally prohibiting admission at trial of evidence obtained in violation of the Fourth Amendment. (*United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]; *Alderman* v. *United States* (1969) 394 U.S. 165 [22 L.Ed.2d 176, 89 S.Ct. 961]; *In re Lance W.* (1985) 37 Cal.3d 873, 881-884 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]; see *Mapp* v. *Ohio* (1960) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933] [federal exclusionary rule applicable to the states].) The exclusionary rule applies to juvenile proceedings that—as here—are filed pursuant to Welfare and Institutions Code

---

[1] Because Officer Villemin's lack of probable cause was not disputed by either party below, we do not reach the argument, raised by amicus curiae California District Attorneys Association, that Officer Villemin actually possessed probable cause to detain and search the minor.

section 602. (*In re William G.* (1985) 40 Cal.3d 550, 567, ■■ ■ [221 Cal.Rptr. 118, 709 P.2d 1287].)

■ Since the passage of Proposition 8 and its amendment of article I, section 28, subdivision (d), of the state Constitution, state and federal claims regarding the admissibility of evidence obtained by an allegedly improper search or seizure "are reviewed under the same standard." (*People* v. *Clark* (1993) 5 Cal.4th 950, 979 ■■ ■ [22 Cal.Rptr.2d 689, 857 P.2d 1099]; *People* v. *McPeters* (1992) 2 Cal.4th 1148, 1171 [9 Cal.Rptr.2d 834, 832 P.2d 146]; *In re Lance W.*, *supra*, 37 Cal.3d 873.) Our state Constitution thus forbids the courts to order the exclusion of evidence at trial as a remedy for an unreasonable search and seizure unless that remedy is required by the federal Constitution as interpreted by the United States Supreme Court. We thus turn first to whether the high court has spoken on this topic.

### B. *Federal Law*

■ "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions.' " (*Mincey* v. *Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408], quoting *Katz* v. *United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507], fn. omitted; see *Skinner* v. *Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 619 [103 L.Ed.2d 639, 661, 109 S.Ct. 1402].) When law enforcement officers conduct a warrantless search, the People bear the burden of justifying the search under a recognized exception to the constitutional warrant requirement. (*Welsh* v. *Wisconsin* (1984) 466 U.S. 740, 749-750 [80 L.Ed.2d 732, 742-743, 104 S.Ct. 2091]; *People* v. *James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135].)

The United States Supreme Court, however, recognizes exceptions to this rule when " ' "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." ' [Citations.] When faced with such special needs, we have not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context. See, *e.g.*, *Griffin* v. *Wisconsin* [(1987) 483 U.S. 868] at 873 [97 L.Ed.2d 709, 717, 107 S.Ct. 3164] (search of probationer's home); *New York* v. *Burger*, 482 U.S. 691, 699-703 [96 L.Ed.2d 601, 612-615, 107 S.Ct. 2636] (1987) (search of premises of certain highly regulated businesses); *O'Connor* v. *Ortega* [(1987) 480 U.S. 709] at 721-725 [94 L.Ed.2d 714, 725-728, 107 S.Ct. 1492]

(work-related searches of employees' desks and offices); *New Jersey* v. *T.L.O.* [(1985) 469 U.S. 325] at 337-342 [83 L.Ed.2d 720, 731-735, 105 S.Ct. 733] (search of student's property by school officials); *Bell* v. *Wolfish*, 441 U.S. 520, 558-560 [60 L.Ed.2d 447, 480-482, 99 S.Ct. 1861] (1979) (body cavity searches of prison inmates)." (*Skinner* v. *Railway Labor Executives' Assn.*, *supra*, 489 U.S. at pp. 619-620 [103 L.Ed.2d at p. 661]; see *Treasury Employees* v. *Von Raab* (1989) 489 U.S. 656, 665-666 [103 L.Ed.2d 685, 701-703, 109 S.Ct. 1384].)

*Griffin* v. *Wisconsin* (1987) 483 U.S. 868 [97 L.Ed.2d 709, 107 S.Ct. 3164] (hereafter *Griffin*) marks the only time the Supreme Court has addressed the question of the constitutionality of probation search conditions. We thus turn to that case for initial guidance. In *Griffin*, Joseph Griffin was placed on probation subject to conditions " 'set by the court and rules and regulations established by the [Wisconsin Department of Health and Social Services].' " (*Id.* at p. 870 [97 L.Ed.2d at p. 715], quoting Wis. Stat. § 973.10(1) (1985-1986).) One condition was that Griffin's probation officer could search his home without a warrant so long as (1) the officer's supervisor approved the search, and (2) " 'reasonable grounds' " existed to believe Griffin possessed contraband. (*Griffin*, *supra*, at pp. 870-871 [97 L.Ed.2d at p. 715].)

When Griffin's probation officer, Michael Lew, learned that Griffin might have a gun in his apartment, Lew conducted a warrantless search of Griffin's apartment, finding a handgun. At the ensuing trial for possession of a firearm by an ex-felon, the trial court denied Griffin's motion to suppress the gun, finding no warrant was necessary because the search was reasonable. The Wisconsin Supreme Court affirmed the judgment, ruling that as a probationer, Griffin's reasonable expectation of privacy was diminished such that a warrantless search based on reasonable cause did not violate the Fourth Amendment. (*Griffin*, *supra*, 483 U.S. at p. 872 [97 L.Ed.2d at pp. 716-717].)

The high court affirmed. It reasoned that the government may dispense with the warrant requirement in situations when " 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " (*Griffin*, *supra*, 483 U.S. at p. 873 [97 L.Ed.2d at p. 717], quoting *New Jersey* v. *T.L.O.*, *supra*, 469 U.S. at p. 351 [83 L.Ed.2d at pp. 740-741] (conc. opn. by Blackmun, J.).) The court found three reasons supported a conclusion that the operation of a probation system presented such "special needs." First, "[a] warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a

supervision the probationer requires." (*Griffin, supra*, 483 U.S. at p. 876 [97 L.Ed.2d at p. 719].) Second, "the delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct. . . ." (*Ibid.*) Third, a warrant and probable cause requirement "would reduce the deterrent effect that the possibility of expeditious searches would otherwise create." (*Ibid.*)

The high court also examined the question of dispensing with the warrant requirement from the perspective of the probationer. "Although a probation officer is not an impartial magistrate, neither is he the police officer who normally conducts searches against the ordinary citizen." (*Griffin, supra*, 483 U.S. at p. 876 [97 L.Ed.2d at p. 719].) The court emphasized that the goal of the probation officer was not to detect crime, but to provide guidance and counseling to his "client." (*Ibid.*)

Thus, the high court concluded that "[t]he search of Griffin's residence was 'reasonable' within the meaning of the Fourth Amendment *because it was conducted pursuant to a valid regulation governing probationers.*" (*Griffin, supra*, 483 U.S. at p. 880 [97 L.Ed.2d at p. 722], italics added.) The court expressly declined to address whether *any* warrantless search was permissible if based on "reasonable grounds." (*Ibid.*) The court also suggested its reasoning was limited to searches based on a state regulation requiring reasonable cause. (*Id.* at p. 880, ■■ ■ [97 L.Ed.2d at p. 722].)

As is clear, although the high court approved of warrantless searches of adult probationers subject to a search condition, it addressed the issue in a case that involved (1) a condition imposed by state regulation, (2) the necessity of approval by the probation officer's supervisor, and (3) a requirement of reasonable cause to search. Even assuming arguendo that the same rules apply to juvenile probationers, the present case is distinguishable because none of the three factors identified by the high court was present. The minor's search condition was imposed by the trial court, not by a statutory scheme. Moreover, supervisorial approval was not required before a probation search condition could be invoked. Finally, state law does not require reasonable cause to invoke a probation search condition, and would instead permit a search pursuant to a probation search condition *without* reasonable cause so long as the decision to search is not arbitrary or intended to harass. (*People* v. *Bravo* (1987) 43 Cal.3d 600, 609 [238 Cal.Rptr. 282, 738 P.2d 336] [hereafter *Bravo*]; see also *People* v. *Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251] [reasonable cause necessary to invoke *parole* search condition]; but see *U.S.* v. *Davis* (9th Cir. 1991) 932 F.2d 752, 758 [distinction between probationer and parolee in this setting not constitutionally significant].)

More important, *Griffin* involved a situation in which the probation officer was clearly aware of the presence of a search condition. By contrast, Officer Villemin did not know the minor was subject to such a condition. Consequently, *Griffin* does not control the question whether a police officer can execute a valid search without being aware of the existence of a probation search condition, which is the question that confronts us here. There is thus no United States Supreme Court decision that directly upholds the constitutionality of Officer Villemin's search of the minor in this case.

### C. *State Law*

In the absence of a decision by the high court directly on point, we must fulfill our independent constitutional obligation to interpret the federal constitutional guarantee against unreasonable searches and seizures (see Cal. Const., art. XX, § 3 [judicial officers swear an oath to support the Constitution]), recognizing that the decisions of the lower federal courts are persuasive but not controlling. (See *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 352 [276 Cal.Rptr. 326, 801 P.2d 1077] [following Proposition 115, state courts are bound by United States Supreme Court decisions interpreting the federal Constitution on several issues; lower federal court decisions merely persuasive]; *People* v. *Brouillette* (1989) 210 Cal.App.3d 842, 846 [258 Cal.Rptr. 635] [same for search and seizure issues following passage of Proposition 8]; cf. *Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869, 879 [271 Cal.Rptr. 513] ["In the absence of a controlling United States Supreme Court decision on a federal question, this court is free to adopt one of the divergent lines of [lower federal court] authority."]; see also *People* v. *Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129] [lower federal court decisions entitled to great weight but are not binding]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 780, p. 751 [same].)

### 1. *The Relevance of Consent*

As does the United States Supreme Court, we follow the rule that a warrantless search is considered unreasonable per se "unless it is conducted pursuant to one of the few, narrowly drawn exceptions to the constitutional requirement of a warrant." (*Bravo, supra*, 43 Cal.3d at p. 609, italics omitted.) One recognized exception is consent. (*Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 219 [36 L.Ed.2d 854, 858, 93 S.Ct. 2041]; *Bravo, supra*, 43 Cal.3d at p. 609; *People* v. *Leib* (1976) 16 Cal.3d 869, 873 [129 Cal.Rptr. 433, 548 P.2d 1105]; see also *United States* v. *Matlock* (1974) 415 U.S. 164 [39 L.Ed.2d 242, 94 S.Ct. 988] [consent of third party having common authority over premises].) Moreover, consent to search may be given *in advance*; thus, a condition of probation requiring an adult probationer to "submit his person, place of residence, vehicle, to search and

seizure at any time of the day or night, with or without a search warrant" (*People* v. *Mason* (1971) 5 Cal.3d 759, 762 [97 Cal.Rptr. 302, 488 P.2d 630]), is justified by the probationer's *advance consent to the search.* (*Bravo, supra,* 43 Cal.3d at p. 608; cf. *People* v. *Burgener, supra,* 41 Cal.3d 505 [adult parolees do not consent to parole search conditions so police must have reasonable cause to execute a search pursuant to the conditions].)

Thus, in *Bravo, supra,* 43 Cal.3d 600, we explained that "[an adult] probationer . . . consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term." (*Id.* at p. 608.) "A probationer's waiver of his Fourth Amendment rights is no less voluntary than the waiver of rights by a defendant who pleads guilty to gain the benefits of a plea bargain." (*Id.* at p. 609.) As with the Wisconsin statutory scheme at issue in *Griffin,* we conclude such advance waiver of Fourth Amendment rights is permissible under the federal Constitution because the state's operation of a probation system presents " 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." (*Griffin, supra,* 483 U.S. at pp. 873-874 [97 L.Ed.2d at p. 717].) Although the probation search condition in this case was imposed by the trial court instead of by state statute, we view that difference as having no constitutional significance. (See *U.S.* v. *Wryn* (9th Cir. 1991) 952 F.2d 1122, 1124 [reasonableness of search condition established by narrowly tailored restrictions in probation agreement]; *U.S.* v. *Giannetta* (1st Cir. 1990) 909 F.2d 571, 575 [same]; *U.S.* v. *Schoenrock* (8th Cir. 1989) 868 F.2d 289, 292-293 [same].)

*Bravo* thus establishes that an adult probationer subject to a search condition may be searched by law enforcement officers having neither a search warrant nor even reasonable cause to believe their search will disclose any evidence.[2] The People urge us to extend *Bravo* to this case. In other words, they contend the juvenile court correctly denied the minor's suppression motion because he was subject to a probation search condition, thus demonstrating that he consented in advance to the intrusion by Officer Villemin.

Setting aside for the moment the fact that the police in *Bravo* were aware of the search condition when they searched the defendant whereas Officer Villemin was not, the success of the People's argument first hinges on the

---

[2]We are aware that the United States Court of Appeals for the Ninth Circuit would require police to have reasonable cause before executing a search pursuant to a probation search condition. (*U.S.* v. *Davis, supra,* 932 F.2d 752, 758.) The same court would prohibit police officers, as opposed to probation officers, from initiating a search based on a probation search condition. (*U.S.* v. *Richardson* (9th Cir. 1988) 849 F.2d 439.) As explained, *ante,* page 79, these lower federal court decisions are not controlling on this court. For the reasons set forth in *Bravo, supra,* 43 Cal.3d 600, we are not persuaded by either *Davis* or *Richardson.*

question of whether a juvenile—like an adult—truly consents to a condition of probation. As we explain, he does not.

### 2. *A Juvenile Cannot Refuse Probation*

When the juvenile court determines a minor is a ward of the court under Welfare and Institutions Code section 602, it has a variety of dispositional options. Should the court decide to place the minor on probation, "[t]he juvenile court has broad discretion in formulating conditions of probation." (*In re Jason J.* (1991) 233 Cal.App.3d 710, 714 [284 Cal.Rptr. 673], disapproved on other grounds, *People* v. *Welch* (1993) 5 Cal.4th 228, 237 [19 Cal.Rptr.2d 520, 851 P.2d 802]; see Welf. & Inst. Code, § 730, subd. (b) ["the court may make any and all reasonable orders for the conduct of the ward"]; *id.*, § 729.1, subd. (a) ["Nothing in this section shall be construed to limit the authority of a juvenile court to provide conditions of probation"]; *id.*, § 729.6, subd. (f) [same].) Some conditions, like the requirement the minor attend school, are mandatory absent an express finding that such a condition would be inappropriate. (See *id.*, § 729.2; Cal. Rules of Court, rule 1493(b).) Other conditions, like one requiring participation in an alcohol or drug education program, are triggered when the minor's misconduct involves specific conduct. (See Welf. & Inst. Code, § 729.10.) In deciding what conditions to place on a juvenile probationer, " ' "the juvenile court must consider not only the circumstances of the crime, but also the minor's entire social history. . . ." . . .' " (*In re Jason J.*, *supra*, 233 Cal.App.3d at p. 714, quoting *In re Frankie J.* (1988) 198 Cal.App.3d 1149, 1153 [244 Cal.Rptr. 254] [hereafter *Frankie J.*].)

The juvenile court's broad discretion to fashion appropriate conditions of probation is distinguishable from that exercised by an adult court when sentencing an adult offender to probation. Although the goal of both types of probation is the rehabilitation of the offender, "[j]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor's reformation and rehabilitation." (*In re Ronnie P.* (1992) 10 Cal.App.4th 1079, 1089 [12 Cal.Rptr.2d 875], internal quotation marks omitted.) "[J]uvenile probation is not an act of leniency, but is a final order made in the minor's best interest." (1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 9.52, p. 256.)

In light of this difference, a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court. (*In re Binh L.* (1992) 5 Cal.App.4th 194, 203 [6 Cal.Rptr.2d 678] [hereafter *Binh L.*] [upholding search condition]; *In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1500 [281

Cal.Rptr. 6] [upholding condition prohibiting presence at known gathering places for street gang]; *Frankie J., supra,* 198 Cal.App.3d at p. 1153 [restriction on weapon possession upheld even though underlying crime did not involve a weapon]; *In re Todd L.* (1980) 113 Cal.App.3d 14, 19 [169 Cal.Rptr. 625] [upholding search condition and alcohol ban].) " 'Even conditions which infringe on constitutional rights may not be invalid if tailored specifically to meet the needs of the juvenile [citation].' " (*Binh L., supra,* 5 Cal.App.4th at p. 203, quoting *In re Michael D.* (1989) 214 Cal.App.3d 1610, 1616 [264 Cal.Rptr. 476]; see generally, *In re Laylah K., supra,* 229 Cal.App.3d at pp. 1500-1502.)

In short, conditions of probation for minors are devised by the juvenile court and placed on a juvenile probationer to ensure his or her reformation and rehabilitation. The conditions are deemed necessary for that purpose and no choice is given to the youthful offender. By contrast, an adult offender "has the right to refuse probation, for its conditions may appear to defendant more onerous than the sentence which might be imposed." (*In re Osslo* (1958) 51 Cal.2d 371, 381 [334 P.2d 1]; *Bravo, supra,* 43 Cal.3d at p. 608; see also *People* v. *Brasley* (1974) 41 Cal.App.3d 311, 317 [115 Cal.Rptr. 910]; *People* v. *Oppenheimer* (1965) 236 Cal.App.2d 863, 866 [46 Cal.Rptr. 476], cert. den. 383 U.S. 930 [15 L.Ed.2d 849, 86 S.Ct. 938]; cf. *People* v. *Welch, supra,* 5 Cal.4th at pp. 236-237 [assuming right to refuse probation in discussing whether defendant must timely object to preserve issue for appeal].)

Although an adult may choose to reject probation and accept incarceration, no such choice is offered a juvenile offender. It would be inconsistent with the juvenile court's determination of the best manner in which to facilitate rehabilitation of a minor if he could, for example, elect to forgo home placement on probation and instead choose detention at the California Youth Authority. In light of this difference between adult and juvenile offenders, we agree with the views expressed by the Courts of Appeal that have addressed this issue (see *Binh L., supra,* 5 Cal.App.4th at p. 202; *In re Nathaniel Z.* (1986) 187 Cal.App.3d 1132, 1140 [232 Cal.Rptr. 378]; *In re Wayne J.* (1979) 97 Cal.App.3d 776, 780 [159 Cal.Rptr. 106]; see also 1 Cal. Juvenile Court Practice, *supra,* § 9.52, p. 255; but see *In re Marcellus L.* (1991) 229 Cal.App.3d 134, 144 [279 Cal.Rptr. 901] [questioning *Nathaniel*

*Z.* and *Wayne J.*]), and conclude that, unlike an adult, a juvenile cannot refuse a grant of probation.[3]

■ Because a minor has no choice whether or not to accept a condition of probation that subjects him to a warrantless search, we cannot find that he consented to the condition. Consequently, it would be improper to resolve the issue in this case by simple reliance on the "advance consent" rationale in *Bravo, supra,* 43 Cal.3d 600. Nonetheless, although a minor may not refuse a condition of probation imposed by the juvenile court, and thus cannot be deemed to have consented to the search condition, that conclusion does not terminate our inquiry, for we must still decide whether the warrantless search of the minor violated his right to be free of unreasonable searches and seizures. As we explain, no such violation occurred here.

### 3. *Reasonable Expectation of Privacy*

■ To determine whether a Fourth Amendment violation occurred, we must determine whether the minor had a reasonable expectation of privacy over the bag of marijuana hidden in his pants. ■ "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' *Katz* v. *United States,* 389 U.S. 347, 360 [19 L.Ed.2d 576, 587, 88 S.Ct. 507] (1967) (Harlan, J., concurring). *Katz* posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" (*California* v. *Ciraolo* (1986) 476 U.S. 207, 211 [90 L.Ed.2d 210, 215, 106 S.Ct. 1809] [hereafter *Ciraolo*].)

As in *Ciraolo, supra,* 476 U.S. 207, the first prong of the test need not detain us long, for it seems clear the minor had manifested a subjective intent to keep private the fact that he was hiding illegal contraband in his pants. That he was not openly displaying the bag, coupled with his attempt to hide it when confronted by police officers, amply demonstrates he harbored a subjective intent to maintain his privacy over the object.

The second prong of the test poses the more difficult question: Is the minor's subjective expectation of privacy "one that society is 'prepared to recognize as legitimate?'" (*New Jersey* v. *T.L.O., supra,* 469 U.S. at p. 338 [83 L.Ed.2d at p. 732], quoting *Hudson* v. *Palmer* (1984) 468 U.S. 517, 526 [82 L.Ed.2d 393, 402-403, 104 S.Ct. 3194].) Answering that question requires an examination of societal values and expectations governing the

---

[3]A minor can, of course, object to particular conditions of probation as improper or unwarranted. (See *Frankie J., supra,* 198 Cal.App.3d at p. 1153; *In re Todd L., supra,* 113 Cal.App.3d at p. 18.)

circumstances of juvenile probation. (See *Ciraolo, supra,* 476 U.S. at p. 212 [90 L.Ed.2d at p. 216], quoting *Oliver* v. *United States* (1984) 466 U.S. 170, 183 [80 L.Ed.2d 214, 227-228, 104 S.Ct. 1735] [question is " 'whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment' "].)

We are guided by two recent lower court opinions that have addressed the issue. The first case is *In re Marcellus L., supra,* 229 Cal.App.3d 134 (hereafter *Marcellus L.*), a case the People describe as "essentially on all fours with the case at bench." In that case, a police officer, lacking any articulable facts to justify a search, conducted a pat-search of a juvenile, finding cocaine base. It was discovered later that the juvenile was subject to a probation search condition comparable to the one at issue here. Acknowledging that a search undertaken pursuant to the condition clearly would be valid, a majority of the First District Court of Appeal, Division Four, found that this search, undertaken *without* knowledge of the condition, was also valid.

The *Marcellus L.* court explained: "What is critical is that the juvenile . . . has been admitted to probation upon a legitimate search condition [citation] *and has absolutely no reasonable expectation to be free from the type of search here conducted.*" (*Marcellus L., supra,* 229 Cal.App.3d at p. 145, italics added.) "[The minor's] expectation of privacy cannot reasonably be said to extend to searches conducted by officers who are ignorant of his probationary status." (*Ibid.*)

In the second case, the Court of Appeal for the Sixth Appellate District also upheld a warrantless search of a juvenile probationer. (*Binh L., supra,* 5 Cal.App.4th 194.) In that case, a police officer, with neither probable cause to search nor knowledge of the existence of a probation search condition, detained and searched a juvenile, finding a loaded pistol. In upholding the search, the *Binh L.* court first explained that the search condition was valid, finding it "was rational both to assure that the minor would correct his behavior and in this sense be rehabilitated, and to protect the public against the possibility he would not." (*Id.* at p. 204.)

Second, the court found the officer's ignorance of the search was irrelevant. Because the juvenile was subject to a valid probation search condition, the court reasoned, he had no reasonable expectation of privacy that the loaded pistol he was carrying could be hidden from police. (*Binh L., supra,* 5 Cal.App.4th at pp. 205-206.) Although the juvenile in *Binh L.* argued that the evidence of the pistol should be excluded to deter police misconduct, the court reasoned that police had not engaged in misconduct because, lacking a

reasonable expectation of privacy, the juvenile's Fourth Amendment rights had not been violated. (*Ibid.*)

We agree with the analysis in both cases. As a general rule, "[adult] probationers 'have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities "reasonable" which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands.'" (*People* v. *Burgener, supra,* 41 Cal.3d at p. 531, quoting *People* v. *Mason, supra,* 5 Cal.3d at pp. 764-765.) We believe this observation applies fully to juvenile probationers as well. (*Binh L., supra,* 5 Cal.App.4th at p. 204.) Conditions of probation provided by statute may—depending on the circumstances—require a juvenile probationer to attend school (Welf. & Inst. Code, § 729.2, subd. (a)), attend counseling with his parents (*id.,* § 729.2, subd. (b)), respect a curfew (*id.,* § 729.2, subd. (c)), submit to drug testing (*id.,* § 729.9), and participate in a drug or alcohol rehabilitation program (*id.,* § 729.10). Certainly these conditions indicate the juvenile probationer's diminished privacy over his conduct and his person.

Two opinions of the United States Supreme Court are analogous to the present case and help inform our analysis. In *Hudson* v. *Palmer, supra,* 468 U.S. 517, a prison inmate (Palmer) brought suit against a correctional officer (Hudson), alleging that Hudson conducted a warrantless "shakedown" search of his cell, uncovering a ripped pillowcase. As a result, Palmer was charged with destruction of state property. On appeal, the question was whether a prison inmate had a reasonable expectation of privacy over his cell. Chief Justice Burger, while admitting the Constitution reached inside the prison walls, explained that imprisonment justifies the curtailment of certain constitutional rights that are inconsistent with the prison environment.

He continued for the court: "We must determine here . . . if a 'justifiable' expectation of privacy is at stake. [Citation.] The applicability of the Fourth Amendment turns on whether 'the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been invaded by government action.' [Citation.] . . . [¶] . . . [W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." (*Hudson* v. *Palmer, supra,* 468 U.S. at pp. 525-526 [82 L.Ed.2d at pp. 402-403].)

Similarly, in *Skinner* v. *Railway Labor Executives' Assn., supra,* 489 U.S. 602, the court faced the constitutionality of federal regulations requiring the

testing of the blood and urine of railway workers involved in certain train accidents. Neither a warrant nor a showing of individualized suspicion was required under the regulations in question. In addition to concluding the government's interest in such information was compelling, the court reasoned "the expectations of privacy of covered employees are diminished by reason of their participation in an industry that is regulated pervasively to ensure safety, a goal dependent, in substantial part, on the health and fitness of covered employees." (*Id.* at p. 627 [103 L.Ed.2d at p. 666].) "Though some of the privacy interests implicated by the toxicological testing at issue reasonably might be viewed as significant in other contexts, logic and history show that a diminished expectation of privacy attaches to information relating to the physical condition of covered employees and to this reasonable means of procuring such information." (*Id.* at p. 628 [103 L.Ed.2d at p. 667].) In short, the covered railway workers could not maintain a successful Fourth Amendment claim against the warrantless search because their expectation of privacy in their blood and urine was sufficiently reduced by the circumstances of their employment.

Although the image of a train wreck in *Skinner* v. *Railway Labor Executives' Assn., supra,* 489 U.S. 602, and the prison cell in *Hudson* v. *Palmer, supra,* 469 U.S. 517, are perhaps extreme examples, the controlling legal proposition in both cases is nevertheless apt. There, as here, the circumstances surrounding the challenged search reveal that the person's expectation of privacy is not one society is prepared to recognize as reasonable and legitimate. ▮ We conclude a juvenile probationer subject to a valid search condition does not have a *reasonable* expectation of privacy over his or her person or property. In this case, Tyrell J. was subject to a valid[4] search condition, directly imposed on him by the juvenile court in a prior matter. We presume he was aware of that limitation on his freedom, and that any police officer, probation officer, or school official could at any time stop him on the street, at school, or even enter his home, and ask that he submit to a warrantless search. There is no indication the minor was led to believe that only police officers who were aware of the condition would validly execute it. The minor certainly could not reasonably have believed Officer Villemin would *not* search him, for he did not know whether Villemin was aware of the search condition. Thus, any expectation the minor may have had concerning the privacy of his bag of marijuana was manifestly unreasonable.

▮ Moreover, imposing a strict requirement that the searching officer must always have advance knowledge of the search condition would be

---

[4]The minor did not challenge below the validity of his probation search condition. Because the record indicates the minor had prior adjudicated incidents involving theft offenses, it is unlikely he could have shown the search condition was improper.

inconsistent with the special needs of the juvenile probation scheme. That scheme embraces a goal of rehabilitating youngsters who have transgressed the law, a goal that is arguably stronger than in the adult context. (Cf. Welf. & Inst. Code, § 202, subd. (b) [acknowledging the "rehabilitative objectives" of the juvenile law], with Pen. Code, § 1170, subd. (a)(1) ["The Legislature finds and declares that the purpose of imprisonment for crime is punishment"].) To better effectuate the rehabilitation of the juvenile, the condition of probation permitting police (and others) to conduct warrantless searches is imposed by the juvenile court to serve the important goal of deterring future misconduct. A juvenile probationer must thus assume every law enforcement officer might stop and search him at any moment. It is this thought that provides a strong deterrent effect upon the minor tempted to return to his antisocial ways. (See *People* v. *Mason*, *supra*, 5 Cal.3d at pp. 763-764; *Skinner* v. *Railway Labor Executives' Assn.*, *supra*, 489 U.S. at p. 630 [103 L.Ed.2d at p. 668] [because a railway worker cannot predict when an accident will happen, regulation requiring drug testing after an accident "significantly increase[s] the deterrent effect of the administrative penalties associated with the prohibited conduct"].) This important deterrent effect would be severely eroded if police officers were required to learn the names and memorize the faces of the dozens and perhaps hundreds of juvenile probationers in their jurisdiction.

This is not to say, of course, that prior knowledge of the search condition by the searching officer is undesirable. Certainly such advance knowledge helps ensure that the resulting search is not conducted "for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes." (*Bravo*, *supra*, 43 Cal.3d at pp. 610.) ▮▮ ▬▮ ▮ Just as "[a] waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons" (*ibid.*), so too a condition of probation imposed on a juvenile should not be relied on to harass the juvenile. (See *People* v. *Clower* (1993) 16 Cal.App.4th 1737 [21 Cal.Rptr.2d 38] [trial court erred by excluding evidence of possible harassment by police, who executed numerous warrantless searches without finding any contraband].)[5] Of course, we do not suggest that Officer Villemin was harassing the minor merely because he lacked probable cause to search him. Nor can we say on this record that the search was arbitrary or capricious.

---

[5]Because a juvenile probationer retains the ability to challenge execution of a search condition on the ground that a search was arbitrary or for purposes of harassment, it cannot be said that such a probationer lacks standing to assert a Fourth Amendment claim. Indeed, we hold today that a juvenile probationer subject to a search condition simply has a greatly reduced expectation of privacy, not that he or she has no legally recognizable privacy rights at all. (See also *In re Lance W.*, *supra*, 37 Cal.3d at pp. 882-883, discussing *Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421] [issue is whether Fourth Amendment

██ The minor suggests that the outcome in this case is dictated by our prior decisions in *People* v. *Gallegos* (1964) 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174] (hereafter *Gallegos*) and *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734]. In *Gallegos*, police—acting without a warrant—placed an apartment under surveillance and arrested the defendant when he attempted to enter the apartment. The apparent basis of the arrest was information from an informant that this court ultimately found was insufficient to constitute probable cause. The arresting officer in *Gallegos* testified, " '. . . I asked [the defendant] if he had been arrested for narcotic violations in the past, *and he stated he had, that he was at that time currently on parole for narcotic violation.* At that time I placed him under arrest.' " (62 Cal.2d at p. 178, italics added.)

The opinion in *Gallegos* adverts to the fact that "the record does not disclose and no claim is made that [the defendant] was detained as a possible parole violator or that his premises were searched for that reason." (*Gallegos, supra,* 62 Cal.2d at p. 178.) As a result, the opinion concludes the People could not rely on the defendant's parole status to justify the search. (*Ibid.*) Far from supporting the proposition that the police may not rely on facts unknown to them at the time of the search, *Gallegos* merely holds that, absent evidence that the defendant was on parole, permitting his arrest for violation of the terms of his parole, the police could not use that status to justify an otherwise improper search. We note that the *Gallegos* opinion plainly states that the defendant "denied he was on parole" and that there was no other evidence of his parole status. (*Ibid.*)

In contrast to the explication of the issue in *Gallegos*, it appears *In re Martinez, supra,* 1 Cal.3d 641, contains more apposite language. In that case, we stated: "[R]egular police officers undertook the search pursuant to their general law enforcement duties; the officers, at the time of the search, did not even know of defendant's parole status. The investigation involved suspected criminal activity, not parole violations. Under these circumstances the officers cannot undertake a search without probable cause and then later seek to justify their actions by relying on the defendant's parole status, a status of which they were unaware at the time of their search." (*Id.* at p. 646.)

Although this passage appears conducive to the minor's position, we are not persuaded by the stated rationale in *Martinez* because, at the time that decision was rendered, there existed no automatic search condition imposed on parolees, inclusive of searches to be performed either by parole officers

rights were violated as a substantive matter, not a question of standing].) Accordingly, we reject the claim that the minor in this case lacked standing.

or law enforcement officers. Therefore, although the defendant in *Martinez* might have been subject to search by his parole officer, he could reasonably expect to be free of arbitrary searches by police officers. (*In re Martinez, supra*, 1 Cal.3d 641, 647, fn. 6.) As the Court of Appeal opinions in *Marcellus L., supra*, 229 Cal.App.3d 134, and *Binh L., supra*, 5 Cal.App.4th 194, explain, and as we make clear in our opinion today, one must *first* have a reasonable expectation of privacy *before* there can be a Fourth Amendment violation.

Finally, our conclusion today is consistent with the primary purpose of the Fourth Amendment exclusionary rule. ▆▆▆ The exclusionary rule serves several salutary purposes, but the United States Supreme Court "has stressed that the 'prime purpose' of the exclusionary rule 'is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.' " (*Illinois* v. *Krull* (1987) 480 U.S. 340, 347 [94 L.Ed.2d 364, 373-374, 107 S.Ct. 1160], quoting *United States* v. *Calandra* (1974) 414 U.S. 338, 347 [38 L.Ed.2d 561, 571, 94 S.Ct. 613]; see also *Nix* v. *Williams* (1984) 467 U.S. 431, 442-443 [81 L.Ed.2d 377, 386-387, 104 S.Ct. 2501] ["core rationale" and "essential purpose" of the exclusionary rule is to deter police misconduct].) Because Officer Villemin did not know whether the minor was subject to a search condition, the officer took the chance that the search would be deemed improper. If it had turned out that the minor was not subject to a search condition, any contraband found in the search of the minor would have been inadmissible in court. Thus, under our interpretation, law enforcement officers still have a sufficient incentive to try to avoid improperly invading a person's privacy. Contrary to the minor's arguments, our reluctance to adopt a strict "knowledge-first" rule for juvenile probation search conditions will not encourage police to engage in warrantless searches.

▆▆▆ In arguing for a different result, the minor relies heavily on his perception that Officer Villemin acted improperly by detaining and then searching him. We need not reach that issue because the premise of the argument is flawed. The detention and pat-search of the minor did not intrude on a *reasonable* expectation of privacy, that is, an expectation that society is willing to recognize as legitimate. Accordingly, Officer Villemin did not act in violation of the Fourth Amendment.

Under these circumstances, even if the minor subjectively expected that he would be able to conceal his illegal possession of marijuana from the outside world, we conclude his expectation was unreasonable, being an expectation that society is unwilling to recognize as legitimate. Inasmuch as Officer Villemin did not intrude upon an area that the minor could reasonably have

expected to remain private, there was no violation of the minor's rights under the Fourth Amendment. Accordingly, there are no grounds on which to exclude the evidence of the marijuana found on the minor's person.

CONCLUSION

It thus appears the juvenile court correctly denied the minor's suppression motion, and that the Court of Appeal erred by reversing that decision. Accordingly, the judgment of the Court of Appeal is reversed.

Arabian, J., Baxter, J., George, J., and Strankman, J.,* concurred.

**KENNARD, J.,** Dissenting.—In this case, a police officer, acting without probable cause, conducted a warrantless search of a minor that resulted in the discovery of contraband. The minor was on probation and subject to a search condition, of which the officer was unaware at the time of the search. To determine the admissibility of the fruits of the search, this court must address two questions: First, may the prosecution rely on the probation search condition as justification for the search when the searching officer did not know of the condition's existence? Second, assuming the prosecution may rely on the search condition, must it nevertheless show that the searching officer had a "reasonable suspicion" that the minor was in violation of the law or of the terms of probation?

The majority holds that the prosecution may rely on the minor's search condition, and that the searching officer, even if ignorant of the search condition, need not have a reasonable suspicion in order to conduct the search. I cannot agree to this startling departure from settled principles underlying the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." Instead of magnifying " 'the moral and educative force of the law,' " which seeks, over time, to inculcate " 'fourth amendment ideals into the value system or norms of behavior of law enforcement agencies' " (*United States* v. *Peltier* (1975) 422 U.S. 531, 555 [45 L.Ed.2d 374, 392, 95 S.Ct. 2313] (dis. opn. of Brennan, J.), today's decision erodes the credibility of the constitutional prohibition against unreasonable searches and seizures.

I

In May 1991, the Fresno County Superior Court declared Tyrell J. (the minor) to be a ward of the juvenile court as a result of his commission of a

---

*Presiding Justice, Court of Appeal, First Appellate District, Division One, assigned by the Acting Chairperson of the Judicial Council.

battery. The court placed the minor on probation, on condition, among others, that he "[s]ubmit to a search of . . . person and property, with or without a warrant, by any law enforcement officer, probation officer or school official."

On October 3, 1991, the minor and some friends were detained by a police officer at a high school football game in Fresno. The officer pulled away a heavy coat worn by one of the minor's friends and found a knife. Seeing the minor adjust the crotch of his pants several times, the officer conducted a pat-search and felt a soft object. The item proved to be a baggie of marijuana, which he seized. At the time, the officer did not know that the minor was on probation and was subject to a search condition.

Charged in juvenile court with possession of marijuana for sale, the minor moved to suppress the marijuana as the fruit of an illegal search and seizure. The prosecution did not contend that the officer had probable cause to search, but argued that the search was valid because of the minor's probation search condition. The court denied the suppression motion, found the charge of possession of marijuana for sale to be true, and declared the minor to be a ward of the court. The Court of Appeal reversed, holding that the search condition could not be used to justify the search of the minor, because the searching officer did not know of its existence.

II

As I mentioned at the outset, the first issue this court must address is whether the Fourth Amendment to the United States Constitution permits the prosecution to rely on a minor's probation search condition to uphold the legality of a search by an officer who did not know of the condition. As the majority recognizes, analysis of this issue must begin with *Griffin* v. *Wisconsin* (1987) 483 U.S. 868 [97 L.Ed.2d 709, 107 S.Ct. 3164], the only case in which the United States Supreme Court has addressed the legality of probation search conditions. In *Griffin*, the defendant's search condition allowed the probation officer to conduct a warrantless search so long as there was "reasonable cause" to believe that the defendant (an adult) possessed contraband. Relying on this condition, a closely divided court upheld, by a five-to-four margin, the validity of a warrantless search of the defendant's apartment by a probation officer. The court reasoned that the government's "special needs" in operating a probation system, such as closely monitoring the probationer's compliance with the conditions of probation to ensure that probation "serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large," permitted dispensation with the requirements of a warrant and probable cause when conducting searches of probationers. (*Id.* at pp. 873-878 [97 L.Ed.2d at pp. 717-721].)

In this case, the majority concedes that *Griffin* v. *Wisconsin, supra,* 483 U.S. 868, does not control the outcome of this case. The search the high court upheld in *Griffin* differs from the search in this case in two respects. First, here the search was conducted not by a probation officer, but by a police officer. Second, the police officer did not know of the probationer's search condition. These differences are significant, because in *Griffin* the United States Supreme Court repeatedly stressed that the search was conducted by a probation officer, whose role was viewed as distinctively different from that of a police officer. In holding that the probation officer did not need to obtain a warrant before conducting the search, the court said: "Although a probation officer is not an impartial magistrate, neither is he the police officer who normally conducts searches against the ordinary citizen. He is an employee of the State Department of Health and Social Services who, while assuredly charged with protecting the public interest, is also supposed to have in mind the welfare of the probationer. . . . In such a setting, we think it reasonable to dispense with the warrant requirement." (*Id.* at pp. 876-877 [97 L.Ed.2d at p. 719].) At a later point, in holding that the probation officer did not need probable cause to conduct the search, the court explained: "[W]e deal with a situation in which there is an ongoing supervisory relationship—and one that is not, or at least not entirely, adversarial—between the object of the search and the decisionmaker." (*Id.* at p. 879 [97 L.Ed.2d at p. 721].)

These statements by the high court in *Griffin* v. *Wisconsin, supra,* 483 U.S. 868, strongly imply that when, as here, a search is conducted not by a probation officer but by a police officer who does not even know of the suspect's probationary status, the eventual discovery that the terms of probation included a search condition may not be used to uphold the validity of the search. Unlike a probation officer, a police officer who conducts such a search does not have "the welfare of the probationer" in mind and has no "ongoing supervisory relationship" with the probationer. Hence, the "special needs" of the probation system that the high court articulated in *Griffin* are inapplicable here. A close look at the relevant decisions by the federal circuits and the courts of other states supports this conclusion.

My research has not disclosed, nor has the majority cited, any decision, whether from a federal or a sister-state court, that has relied on a search condition to uphold a search by an officer who did not know of the condition's existence. Indeed, federal cases have limited the prosecution's use of search conditions to a far greater extent, holding that *even when the searching police officer knows of the existence of a search condition,* reliance on the condition is improper when the officer acted in the capacity of an agent of the police, and the search was conducted for purposes of law

enforcement, rather than for purposes related to probation or parole. (*U.S.* v. *Harper* (9th Cir. 1991) 928 F.2d 894, 897; *U.S.* v. *Butcher* (9th Cir. 1991) 926 F.2d 811, 815; *U.S.* v. *Giannetta* (1st Cir. 1990) 909 F.2d 571, 581; *U.S.* v. *Cardona* (1st Cir. 1990) 903 F.2d 60, 63; *U.S.* v. *Richardson* (9th Cir. 1988) 849 F.2d 439, 441; *United States* v. *Merchant* (9th Cir. 1985) 760 F.2d 963, 969; *United States* v. *Jarrad* (9th Cir. 1985) 754 F.2d 1451, 1454; *Owens* v. *Kelley* (5th Cir. 1982) 681 F.2d 1362, 1369.) That view is shared by the state courts that have addressed the issue. (*Com.* v. *Pickron* (1993) 535 Pa. 241 [634 A.2d 1093, 1097]; *State* v. *Johnson* (Utah 1987) 748 P.2d 1069, 1072]; *State* v. *Flakes* (1987) 140 Wis.2d 411 [410 N.W.2d 614, 620]; *State* ex rel. *Corgan* v. *King* (Okla.Ct.App. 1994) 868 P.2d 743, 747; *People* v. *Candelaria* (1978) 63 A.D.2d 85, 90 [406 N.Y.S.2d 783]; see also *State* v. *Smith* (1992) 117 Ore.App. 473 [844 P.2d 276] [under state law, probation search conditions may only authorize searches by probation officers, not police].)

Legal commentators too support that view. As the leading treatise on probation and parole explains: "[A] court . . . must guard against subterfuge searches. A police officer lacking probable cause should not be able to ask a parole or probation caseworker to conduct a search pursuant to the latter's general monitoring and supervisory authority." (Cohen & Gobert, The Law of Probation and Parole (1983) § 8.04, p. 382.) In this case, the police officer conducting the search did not even purport to invoke the monitoring and supervisory authority of the minor's probation officer, for the police officer did not know that the minor was on probation. "[Q]uite obviously there is no rational basis upon which to uphold otherwise illegal police searches of persons only later determined to be on probation or parole." (4 La Fave, Search & Seizure: A Treatise on the Fourth Amendment (2d ed. 1987) § 10.10(e), pp. 154-155.)

I now turn to a discussion of this court's prior decisions that prohibited the prosecution from relying on the parole authority's right to search a parolee to uphold the legality of a search when the searching police officer had no knowledge that the person searched was a parolee.

This court first discussed the issue, albeit briefly, in *People* v. *Gallegos* (1964) 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174]. In that case, police officers conducted a warrantless search of the defendant's house; during the search, the defendant mentioned that he was on parole. In concluding that the prosecution could not rely on the defendant's parole status as justification for the search, we said: "[T]he record does not disclose and no claim is made that [the defendant] was detained as a possible parole violator or that his premises were searched for that reason. Although under ordinary circumstances a parolee's place of residence may be searched prior to an arrest

. . . , in the instant case the status of the defendant as a parolee was not relied upon by the arresting officer. Hence, lacking evidence in this regard, the search of defendant's premises which immediately followed the arrest, and the results thereof, could not be utilized in justification of the arrest." (*Id.* at p. 178, citations omitted; see also *People* v. *Gastelum* (1965) 237 Cal.App.2d 205, 207 [46 Cal.Rptr. 743] ["[W]hen law enforcement officers are unaware of a defendant's parole status the fact of parole . . . cannot justify an otherwise unlawful search."].)

We discussed the issue at greater length in *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734]. There, the Adult Authority (now Board of Prison Terms) revoked the defendant's parole based on evidence seized by police officers who did not know that the defendant was on parole. Although we held that the evidence seized need not be excluded from a parole revocation proceeding because the exclusionary rule is inapplicable to such proceedings, we also explained that the defendant's status as a parolee could not be relied upon to justify the search in a new criminal case based on the illegally seized evidence. We said: "In the instant case regular police officers undertook the search pursuant to their general law enforcement duties; the officers, at the time of the search, did not even know of defendant's parole status. . . . Under these circumstances the officers cannot undertake a search without probable cause and then later seek to justify their actions by relying on the defendant's parole status, a status of which they were unaware at the time of their search." (*Id.* at p. 646.)

When this court rendered its decisions in *People* v. *Gallegos, supra,* 62 Cal.2d 176, and *In re Martinez, supra,* 1 Cal.3d 641, we did not refer to the parolees in those cases as having parole search conditions. At that time, express search conditions were rarely used with parole grants because, under the doctrine of "custodia legis," the status of parolee was deemed sufficient in itself to justify excepting searches by parole authorities from the Fourth Amendment's warrant requirement. (See *People* v. *Burgener* (1986) 41 Cal.3d 505, 529-530 [224 Cal.Rptr. 112, 714 P.2d 1251]; *People* v. *Gastelum* (1965) 237 Cal.App.2d 205, 208 [46 Cal.Rptr. 743].) Under this view, every grant of parole included an implied search condition, and an officer's knowledge of parole status was equivalent to knowledge of a parole search condition.

Unless they can be distinguished from the situation here, this court's decisions in *People* v. *Gallegos, supra,* 62 Cal.2d 176, and *In re Martinez, supra,* 1 Cal.3d 641, are dispositive of the case at hand: they establish a rule, now decades old, that the prosecution may not rely on a defendant's express or implied search condition when the police officer conducting the search did not know of its existence.

In both *People* v. *Gallegos, supra,* 62 Cal.2d 176, and *In re Martinez, supra,* 1 Cal.3d 641, the person searched was an adult who was on parole. Here, on the other hand, the search involved a juvenile who was on probation. As I shall explain, however, these distinctions are inconsequential, and therefore this court's prior decisions in *Gallegos* and *In re Martinez* should govern this case.

Most courts have found no significant differences, for purposes of the Fourth Amendment, between probation search conditions and parole search conditions. (See, e.g., *U.S.* v. *Hill* (3d Cir. 1992) 967 F.2d 902, 909; *U.S.* v. *Davis* (9th Cir. 1991) 932 F.2d 752, 758; *U.S.* v. *Harper, supra,* 928 F.2d at p. 896, fn. 1.)[1] In *People* v. *Bravo* (1987) 43 Cal.3d 600 [238 Cal.Rptr. 282, 738 P.2d 336], however, this court perceived an important difference between adult parolees who have served a determinate term and adult probationers, permitting a greater intrusion on the latter's Fourth Amendment rights. The court explained: "A probationer, unlike a parolee, consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term. Probation is not a right, but a privilege. 'If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence.' " (*People* v. *Bravo, supra,* 43 Cal.3d at p. 608, quoting *In re Bushman* (1970) 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727].) Because the waiver of Fourth Amendment rights is voluntary, the *Bravo* court held, a probationer may consent to a more substantial waiver of Fourth Amendment rights than may be involuntarily imposed on a parolee.[2]

Although voluntarily accepted search conditions may result in a broader Fourth Amendment waiver than conditions involuntarily imposed, even a voluntarily accepted search condition does not permit a search by an officer ignorant of that condition. This court has so determined in *People* v. *Gallegos, supra,* 62 Cal.2d 176, and *In re Martinez, supra,* 1 Cal.3d 641. The suspects searched in those cases were parolees, but they could have rejected the grants of parole because they had been sentenced under the indeterminate sentencing law. (Compare *In re Schoengarth* (1967) 66 Cal.2d 295, 301 [57 Cal.Rptr. 600, 425 P.2d 200] [prisoner under indeterminate sentencing law

---

[1] At least one court has suggested that the Fourth Amendment rights of individuals on parole may be limited to a *greater* extent than those on probation. (*U.S.* v. *Cardona, supra,* 903 F.2d at p. 63.) In this case, the majority does the opposite.

[2] In *People* v. *Bravo, supra,* 43 Cal.3d 600, this court upheld the legality of a search of an adult probationer that was conducted by a police officer who knew that the probationer was subject to a search condition. *Bravo* was filed only two weeks after the United States Supreme Court's decision in *Griffin* v. *Wisconsin, supra,* 483 U.S. 868; yet, it did not discuss or even cite *Griffin.*

not required to accept parole] with *People* v. *Burgener, supra*, 41 Cal.3d 505, 529 [after determinate term prisoner may not reject release on parole].) Even when the person searched has voluntarily accepted an express or implied search condition, that condition cannot justify a warrantless search by an officer engaged in general law enforcement duties who has no knowledge of the search condition.

Nor is it of any significance that, unlike *People* v. *Gallegos, supra*, 62 Cal.2d 176, and *In re Martinez, supra*, 1 Cal.3d 641, this case involves a search condition imposed on a minor rather than an adult. The purposes underlying search conditions imposed for juvenile probationers, as described by the majority, are indistinguishable from those justifying the imposition of search conditions on adult parolees. The majority explains the purposes underlying search conditions for juvenile probationers as follows: "To better effectuate the rehabilitation of the *juvenile*, the condition of *probation* permitting police (and others) to conduct warrantless searches is imposed . . . to serve the important goal of deterring future misconduct. A *juvenile probationer* must thus assume every law enforcement officer might stop and search him [or her] at any moment." (Maj. opn., *ante*, p. 87, italics added.) This statement is equally true if one substitutes the words "adult" and "parole" for "juvenile" and "probation," so that the sentence instead reads: "To better effectuate the rehabilitation of the [adult,] the condition of [parole] permitting police (and others) to conduct warrantless searches is imposed . . . to serve the important goal of deterring future misconduct. An [adult parolee] must thus assume every law enforcement officer might stop and search him [or her] at any moment."

Thus, there are no significant differences, for purposes of the Fourth Amendment, between search conditions imposed upon adult parolees and those imposed upon juvenile probationers. Therefore, our conclusion in *People* v. *Gallegos, supra*, 62 Cal.2d 176, and *In re Martinez, supra*, 1 Cal.3d 641, that a search may not be justified by a parole search condition of which the searching officer is unaware, should be dispositive of this case.

The majority, however, states that it is "not persuaded" by *People* v. *Gallegos, supra*, 62 Cal.2d 176, and *In re Martinez, supra*, 1 Cal.3d 641. (Maj. opn., *ante*, p. 88.) The majority reasons that a probationary search condition eviscerates a minor's reasonable expectation of privacy, thereby rendering the searching officer's knowledge of the search condition "irrelevant." Because, as a result of the search condition in this case, the minor knew that he could be searched by a police officer at any time, the majority concludes that he had no privacy right that was violated by the officer who searched him.

The majority's reasoning is unsound. Under the United States Supreme Court's decision in *Griffin* v. *Wisconsin, supra,* 483 U.S. 868, "involuntary" search conditions such as the one imposed on the minor in this case are permitted only because the probation system's special supervisory needs allow "a degree of impingement upon privacy that would not be constitutional if applied to the public at large." (*Id.* at p. 875 [97 L.Ed.2d at p. 718].) But here the search was not conducted to satisfy those needs, for the searching officer did not know that the minor was on probation when he conducted the search. "Clearly, in order to have the requisite reason related to the 'rehabilitative and reformative purposes of probation,' the searching officer must have knowledge that the defendant is indeed on probation. In the absence of such knowledge, the objective of the search is simply unrelated to any proper probationary purpose." (*In re Marcellus L.* (1991) 229 Cal.App.3d 134, 147 [279 Cal.Rptr. 901] (dis. opn. of Reardon, J.).)

If the search condition imposed on the minor here were to authorize searches wholly unrelated to the minor's probationary status, then the search condition would be constitutionally invalid. We need not, however, invalidate the minor's search condition, because we may construe the condition more narrowly, in a commonsense manner that does not transgress constitutional boundaries. In my view, the search condition should be read as authorizing only those searches that are conducted by police and probation officers who knowingly invoke its terms. Construed in this fashion, the search condition does not violate the Fourth Amendment; nor does it destroy the minor's reasonable expectation of privacy, except to the extent that it allows a search by officers who know of his probationary status and of the search condition. In this case, the officer who conducted the search was unaware that the minor was on probation and subject to a search condition. Therefore, the prosecution should not be permitted to rely on the condition to validate the otherwise unlawful search.

The majority asserts that a rule prohibiting officers from relying on search conditions of which they have no knowledge "would be inconsistent with the special needs of the juvenile probation scheme." (Maj. opn., *ante,* pp. 86-87.) The purpose of the search condition, according to the majority, is to deter future misconduct, because a juvenile subject to the search condition must assume that any law enforcement officer might stop and search the juvenile at any moment. This deterrent effect, the majority claims, would be "severely eroded" if police officers are required "to learn the names and memorize the faces" of the juveniles on probation in their jurisdiction. (*Ibid.*) But the majority does not explain *how* the deterrent effect will be "severely eroded." To the extent that a minor subject to a probationary search condition is deterred from engaging in criminal activity because of the fear of

being searched by any police officer at any time, such fear and deterrence will exist regardless of whether police officers must "learn the names and memorize the faces" of juvenile probationers.

More important, the majority's decision does not safeguard the constitutional right to be free from unreasonable searches and seizures. (U.S. Const., 4th Amend.; Cal. Const. art. I, § 13.) Today's holding offers police officers an incentive to search any juvenile despite the lack of probable cause and a warrant, for if it later turns out that the juvenile has a probation search condition, the fruits of the search will be admissible in court. Thus, the majority rule encourages police to "search first and ask questions later." A policy more at odds with the purpose underlying the Fourth Amendment would be difficult to imagine.

### III

Almost as an afterthought, the majority resolves a second important issue concerning the effect of search conditions imposed on juveniles in criminal cases: May an officer search a minor subject to such a condition *without any cause whatever*, so long as the search is not conducted for purposes of harassment? Or must the searching officer have at least a "reasonable suspicion" (which need not amount to probable cause) that the minor has violated the law or a condition of probation?

This issue need not be resolved here, because the searching officer unquestionably had a reasonable suspicion that the minor had violated the law: the officer had just discovered that the minor's friend was carrying a concealed weapon, and the minor's gestures suggested that he, too, might be concealing a weapon on his person. Nevertheless, the majority chooses to address the issue, and proceeds to decide it incorrectly, concluding that an officer may search a minor subject to a probation search condition even if lacking a reasonable suspicion that the minor has violated the law or any condition of the minor's probation. (Maj. opn., *ante*, p. 78.) The majority's conclusion is inconsistent with our own decisions.

In *People* v. *Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251], this court held that a warrantless search of an adult parolee pursuant to a search condition is invalid in the absence of a "reasonable suspicion" that the parolee is engaged in conduct that violates the parole. (*Id.* at p. 535.) The court observed: "The justification for exempting parole searches from the warrant requirement of the Fourth Amendment is that these searches are necessary for effective parole supervision. If a search is to have a parole supervision purpose therefore it must be based on information which leads

the parole agent who conducts or authorizes the search to believe that the parolee has violated the law or another condition of his parole, or is planning to do so." (*Id.* at p. 533.) The reasonable suspicion, of course, must be based on objective, articulable facts. (*Id.* at p. 535.)

As I discussed earlier (*ante*, p. 95), there are no significant differences, for Fourth Amendment purposes, between search conditions imposed on adult parolees and those imposed on juvenile probationers. Thus, the rule this court set forth in *People* v. *Burgener*, *supra*, 41 Cal.3d 600, that parolees can be searched only when there is a reasonable suspicion that they have violated the law, is equally applicable to juvenile probationers.

To reach a contrary conclusion, the majority cites *People* v. *Bravo*, *supra*, 43 Cal.3d 600, 609. The majority does not even attempt to explain why *Bravo* is dispositive of this issue, perhaps because it cannot do so. As previously explained (*ante*, p. 95), *Bravo*'s rule that adult probationers may be searched without reasonable cause is based on the premise that they consented to the search. Because juveniles on probation do not voluntarily consent to waive their Fourth Amendment rights (*ante*, p. 95), *Bravo* is inapplicable, and the Fourth Amendment rights of juveniles can be restricted to no greater degree than the rights of adult parolees. Just as the search of an adult parolee pursuant to a search condition must be based on reasonable suspicion (*People* v. *Burgener*, *supra*, 41 Cal.3d at p. 533), so must the search of a juvenile probationer who is subject to a search condition.

### CONCLUSION

The majority's principal holding—that to justify the validity of a warrantless search of a juvenile, the prosecution may rely on a minor's probation search condition of which the searching officer is completely ignorant—is contrary to the unanimous views of the federal bench, the courts of other states, the legal commentators that have addressed this issue, and this court's own decisions. By upholding an otherwise illegal search because of a fact (the existence of the search condition) unknown to the officer conducting the search, the majority encourages police officers to embark on a practice of "search first and ask questions later." This is precisely the kind of conduct that the exclusionary rule seeks to deter.

I would affirm the decision of the Court of Appeal.

Mosk, J., concurred.

Appellant's petition for a rehearing was denied October 20, 1994, and the opinion was modified to read as printed above.