118 Cal.Rptr.2d 201 (2002)
96 Cal.App.4th 1389
The PEOPLE, Plaintiff and Respondent,
v.
John Nicholas BLACK, Defendant and Appellant.
In re John Nicholas Black, On Habeas Corpus.
Nos. F033914, F038143.
Court of Appeal, Fifth District.
March 22, 2002.
Review Granted June 12, 2002.
*202 Shama H. Mesiwala, under appointment by the Court of Appeal, for Defendant, Appellant and Petitioner.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Louis M. Vasquez, Lloyd G. Carter and Michelle L. West, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
WISEMAN, J.

INTRODUCTION
Recognizing that what goes around comes around, we reconsider the scope of a case that originated out of this court. In 1992, we held the People could not validate a search by relying on a probation search condition that the searching officer was unaware of at the time the search was conducted. Our decision was not on the books for long. It was promptly reversed in In re Tyrell J. (1994) 8 Cal.4th 68, 32 Cal.Rptr.2d 33, 876 P.2d 519 (Tyrell J.), which held "a juvenile probationer subject to a valid search condition does not have a reasonable expectation of privacy over his person or property." (Id. at p. 86, 32 Cal.Rptr.2d 33, 876 P.2d 519.)
Tyrell J. was the equivalent of a legal blockbuster because the California Supreme Court turned the issue of probation searches on its head. The focus no longer was on consent as an exception to the probable cause" requirement (see People v. Bravo (1987) 43 Cal.3d 600, 608-609, 238 Cal.Rptr. 282, 738 P.2d 336) but whether the minor could assert a right of privacy. The court reasoned that because Tyrell could not refuse probation, he could not expect to be free from arbitrary searches *203 by police officers, even though parolees under similar circumstances did have that reasonable expectation. (Tyrell J., supra, 8 Cal.4th at p. 89, 32 Cal.Rptr.2d 33, 876 P.2d 519; see People v. Bravo, supra, 43 Cal.3d at p. 608, 238 Cal.Rptr. 282, 738 P.2d 336; People v. Burgener (1986) 41 Cal.3d 505, 529, fn. 12, 224 Cal.Rptr. 112, 714 P.2d 1251, overruled in People v. Reyes (1998) 19 Cal.4th 743, 753, 80 Cal. Rptr.2d 734, 968 P.2d 445; In re Martinez (1970) 1 Cal.3d 641, 646, 83 Cal.Rptr. 382, 463 P.2d 734.)
At first, it appeared Tyrell J. was uniquely aimed at searches of juveniles based on the court's reference to the laudable goal of "rehabilitating youngsters who have transgressed the law, a goal that is arguably stronger than in the adult context." (Tyrell J. 8 Cal.4th at p. 87, 32 Cal.Rptr.2d 33, 876 P.2d 519.) In the next 10 years, we quickly learned the scope of Tyrell J. would extend far beyond situations involving juvenile probationers. So, at the risk of tempting fate by turning what until recently used to be a routine disposition into a full-blown published opinion, we struggle with essentially the same issue in an adult probationer context.
In People v. Robles (2000) 23 Cal.4th 789, 97 Cal.Rptr.2d 914, 3 P.3d 311, the California Supreme Court held the People may not validate a warrantless search of a residential garage, after the fact, based on advanced consent to probation searches when the searching officers were unaware of the advance consent. There, the defendant's brother (a cohabitant of defendant's residence) was the person subject to a probation search, and the Robles court refused to extend the logic of Tyrell J. Meanwhile, People v. Moss (S087478), review granted June 28, 2000, was pending before the California Supreme Court. Moss raised the question of whether a police officer violated the Fourth Amendment rights of an adult probationer who was subject to a search condition when, at the time her apartment was searched, the officer was unaware of the search condition. Moss was dismissed and remanded to the Court of Appeal by order of the Supreme Court on January 16, 2002.
In hopes of providing some guidance to the trial courts on an issue that frequently recurs, and in the interest of justice, we timorously exercise our discretion to decide the issue previously pending in People v. Moss (S087478). The majority opinion concludes that in the context of a residential search, the rationale of Robles requiring pre-search knowledge of probationary search conditions includes persons on probation that are personally subject to warrantless searches. Thus we remand for a new hearing on defendant's motion to suppress.
In the unpublished portion of the opinion, we conclude the mandate of People v. Lilienthal (1978) 22 Cal.3d 891, 896, 150 Cal.Rptr. 910, 587 P.2d 706, pertaining to renewal of suppression motions survives post-trial court unification. Further, we reject defendant's contention that he received ineffective assistance of trial counsel because counsel failed to renew the suppression motion. Consequently, defendant's petition for writ of habeas corpus is denied.

PROCEDURAL HISTORY
Defendant and a codefendant were charged by complaint with four offenses: possession for sale of methamphetamine (Health & Saf.Code, § 11378), a felony (count one); possession of a firearm by a felon (Pen.Code, § 12021, subd. (a)(1)),[1] a felony (count two); possession of narcotics paraphernalia (Health & Saf.Code, *204 § 11364), a misdemeanor (count three); and possession of not more than 28.5 grams of marijuana (Health & Saf.Code, § 11357, subd. (b)), a misdemeanor (count four). Prior to the preliminary hearing, defendant and the codefendant filed motions to suppress evidence (§ 1538.5), which were heard concurrently with the preliminary hearing and denied as to defendant. The codefendant's motion was granted and counts one, two and four against him were dismissed.
An information was filed charging defendant with the same charges listed in the complaint, as well as a special allegation he had a prior serious felony conviction (a 1998 conviction of robbery) within sections 667, subdivisions (b)-(i) and 1170.12, subdivisions (a)-(e). Defendant entered pleas of not guilty, denied the special allegation, and demanded a jury trial.
Trial of the special allegation was bifurcated and the parties stipulated defendant had previously been convicted of a felony with respect to the firearm possession charge. The jury convicted defendant as charged, except in count one. In count one, he was found guilty of possession of methamphetamine in violation of Health and Safety Code section 11377, subdivision (a), a lesser included offense of the charge in count one. The parties waived jury trial with respect to the special allegation, and the court found true the allegation that defendant had previously been convicted of a serious felony.
At sentencing, the court implicitly declined to set aside the "strike" finding, denied probation and sentenced defendant to concurrent 6 year prison terms in counts one and two (consisting of the upper term in each count, doubled pursuant to the Three Strikes law) less 278 days presentence credits. The court imposed time served sentences on the misdemeanors.
Defendant timely filed a notice of appeal. During the pendency of the appeal, in response to appellate counsel's letter, the trial court issued an amended minute order reflecting stays of the misdemeanor counts (counts three and four) pursuant to section 654. We take judicial notice of that order (a certified copy of which was received by this court on January 5, 2000), as requested by defendant.
Appellate counsel filed an opening brief which requested we review the record independently pursuant to People v. Wende (1979) 25 Cal.3d 436,158 Cal.Rptr. 839, 600 P.2d 1071. On January 2, 2001, following independent review, we requested supplemental briefing with respect to the denial of defendant's motion to suppress evidence under section 1538.5 at the preliminary hearing. On April 18, 2001, appellate counsel's request to expand the appointment to include the filing of a petition for writ of habeas corpus was granted. Defendant filed his petition for writ of habeas corpus on May 14, 2001.

FACTUAL HISTORY
The issues raised in defendant's supplemental brief and petition for writ of habeas corpus pertain to defendant's motion to suppress evidence at the preliminary hearing. Thus, we summarize the evidence presented at that hearing.
On February 13, 1999, Fresno Police Officer Richard Zuniga was dispatched to 473 East Calimyrna, apartment 102. As he approached the residence, Zuniga saw a burnt propane tank and some burnt rugs on the apartment patio. Zuniga spoke to an upstairs resident of the apartment complex who said he thought there had been a fire inside the apartment. When Zuniga knocked on the door or rang the doorbell, defendant answered. Zuniga entered the apartment and spoke to defendant. Codefendant *205 Timothy Akopoff was also in the room. Zuniga smelled smoke and noticed a large number of tools, electronics, and other types of equipment in the living room and kitchen areas. Zuniga also noticed that defendant's eyes were extremely dilated.
Defendant directed Zuniga through the living room and into a bedroom where the fire took place, and Zuniga noticed a strong odor of smoke. Defendant pulled back the carpets and showed Zuniga the burned area of the carpet. Defendant stated the fire started when he lit a propane tank in the bedroom. According to defendant, he was testing the propane tank as a heating device. In the bedroom, Zuniga saw a chair, a weight bench, a chest of drawers, and two bicycles, but no bedroom furniture.
Zuniga directed other officers to check for any evidence of fire or fire damage. Officer Miller told Zuniga he saw, in plain view, drug paraphernalia (glass pipes), a plastic bag containing a white powdery substance, a plastic bag containing four white pills, shotgun cartridges, and numerous dirks and daggers. Miller also found a "tackle box that was placed on the bed." Inside the tackle box, Miller found a handgun, defendant's California identification card, $559 in cash, more powdery white substance, and marijuana.[2]
Both defendant and Akopoff were arrested. After advising Akopoff of his rights under Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, he told Zuniga the room where the tackle box was found was his bedroom, and that everything in that room belonged to him. At some point, apparently before he was arrested, defendant told Zuniga that he had been living with Akopoff for approximately two weeks, and had been staying in the room where the fire started.
Detective Lori Grove testified that after waiving his Miranda rights, Akopoff stated he had no knowledge of the tackle box or its contents, and they did not belong to him. After waiving his Miranda rights, defendant told Grove that he lived in the bedroom of the apartment that did not have a bed in it. He also said he had absolutely no knowledge of the tackle box or how his driver's license got into the box. Defendant stated he suspected that narcotics were coming in and out of the house, but because it was not his apartment, he never asked.
The prosecution and defense stipulated there was no search warrant. The prosecution presented evidence that defendant had been placed on probation in San Diego County on April 15, 1998, and had agreed to be subject to search and seizure during his probation term, set to expire on April 14, 2001.
Following argument, the court denied defendant's motion to suppress.

DISCUSSION

I.-II.[**]

Renewal of the suppression motion
Defendant requests we exercise our discretion to consider the merits of his claim even though his failure to renew the motion in the trial court may be deemed a *206 forfeiture on appeal under Lilienthal (People v. Williams (1998) 17 Cal.4th 148, 161-162, 69 Cal.Rptr.2d 917, 948 P.2d 429.) We opt to review defendant's claim in the interest of justice largely because Robles appears to give the rationale of Martinez, supra, 1 Cal.3d at page 646, 83 Cal.Rptr. 382, 463 P.2d 734, renewed vitality. In Martinez, the defendant was released on parole in June 1962. In February 1963, the defendant was subsequently arrested and charged with possession of heroin, and was eventually found guilty in October 1963, resulting in revocation of his parole in February 1964. In March 1965, the appellate court reversed the defendant's conviction, in part, on the ground the evidence introduced at trial was the result of an unconstitutional search.[6] (Id, at p. 644, 83 Cal.Rptr. 382, 463 P.2d 734.)
Despite the reversal, however, the defendant remained in jail on the basis of his parole having been revoked. Although the adult authority was aware of the conviction reversal, it decided against restoring the defendant's parole status when the defendant's application for parole came up for consideration in October 1965. In reaching its decision, the authority considered the evidence previously determined to have been illegally obtained. (Martinez, supra, 1 Cal.3d at pp. 645-646, 83 Cal. Rptr. 382, 463 P.2d 734.)
The California Supreme Court granted review, and considered whether the adult authority could properly consider evidence which had been obtained as a result of an unconstitutional search and seizure. In deciding this evidence could not be considered, the Supreme Court stated:
"Although past cases have sometimes declared that a parolee is in `constructive custody' or `without liberty,' `[f]ictions of "custody" and the like ... cannot change the reality of a parolee's conditional freedom and cannot affect the constitutional protections surrounding his interest in that conditional freedom.' [Citation.] In the instant case regular police officers undertook the search pursuant to their general law enforcement duties; the officers, at the time of the search, did not even know of defendant's parole status. The investigation involved suspected criminal activity, not parole violations. Under these circumstances the officers cannot undertake a search without probable cause and then later seek to justify their actions by relying on the defendant's parole status, a status of which they were unaware at the time of their search. [Citations.]" (In re Martinez, supra, 1 Cal.3d at pp. 646-647, 83 Cal.Rptr. 382, 463 P.2d 734; fn. omitted.)
The basis for the above statement in Martinez, however, appeared to have been undermined by Tyrell J. (See People v. Lewis (1999) 74 Cal.App.4th 662, 668, 88 Cal.Rptr.2d 231 ["The Martinez holding cited above can no longer be regarded as controlling."].)
In Tyrell J., the minor was declared a ward of the court for his commission of a battery, and placed on probation "subject to a variety of conditions, including that he `[s]ubmit to a search of [his] person and property, with or without a warrant, by any law enforcement officer, probation officer or school official.'" (Tyrell J., supra, 8 Cal.4th at p. 74, 32 Cal.Rptr.2d 33, 876 P.2d 519.) In October 1991, the minor and two friends were attending a football game. Although the temperature exceeded 80 degrees, a Fresno police officer noticed *207 one of the minor's friends wearing a heavy coat. The officer, along with a detective, approached the three boys, and after pulling away the coat, observed a large knife. The three boys were then asked to walk over to a fence. As the minor walked to the fence, he was seen adjusting his pants three times. Once the minor reached the fence, the officer conducted a pat search, and discovered a bag of marijuana. (Id. at pp. 74-75, 32 Cal. Rptr.2d 33, 876 P.2d 519.)
Although the officer testified he was unaware of the search condition at the time of the search, the juvenile court denied the minor's suppression motion. This court, however, reversed, finding the officer did not have probable cause to search the minor, and the existent search condition did not validate the search. (Id. at p. 75, 32 Cal.Rptr.2d 33, 876 P.2d 519.) The Supreme Court granted the People's petition for review and reversed, stating:
"[A] juvenile probationer subject to a valid search condition does not have a reasonable expectation of privacy over his or her person or property. In this case, Tyrell J. was subject to a valid search condition, directly imposed on him by the juvenile court in a prior matter. We presume he was aware of that limitation on his freedom, and that any police officer, probation officer, or school official could at any time stop him on the street, at school, or even enter his home, and ask that he submit to a warrantless search. There is no indication the minor was led to believe that only police officers who were aware of the condition would validly execute it. The minor certainly could not reasonably have believed Officer Villemin would not search him, for he did not know whether Villemin was aware of the search condition. Thus, any expectation the minor may have had concerning the privacy of his bag of marijuana was manifestly unreasonable." (Tyrell J., supra, 8 Cal.4th at p. 86, 32 Cal.Rptr.2d 33, 876 P.2d 519, fn. omitted.)
Significantly, the Supreme Court also directly addressed, and rejected as distinguishable, the holding in Martinez:
"Although this passage appears conducive to the minor's position, we are not persuaded by the stated rationale in Martinez because, at the time that decision was rendered, there existed no automatic search condition imposed on parolees, inclusive of searches to be performed either by parole officers or law enforcement officers. Therefore, although the defendant in Martinez might have been subject to search by his parole officer, he could reasonably expect to be free of arbitrary searches by police officers. [Citation.] As the Court of Appeal opinions in Marcellus L., supra, 229 Cal.App.3d 134 [279 Cal. Rptr. 901], and Binh L., supra, 5 Cal. App.4th 194 [6 Cal.Rptr.2d 678], explain, and as we make clear in our opinion today, one must first have a reasonable expectation of privacy before there can be a Fourth Amendment violation." (In re Tyrell J., supra, 8 Cal.4th at pp. 88-89, 32 Cal.Rptr.2d 33, 876 P.2d 519.)
Prior to Robles, the California Supreme Court decided People v. Reyes, supra, 19 Cal.4th 743, 80 Cal.Rptr.2d 734, 968 P.2d 445. In Reyes, the court "granted review to resolve the tension apparent in our precedents and to decide whether the logic of Tyrell J. has significance in the context of adult parole searches." (Id. at p. 746, 80 Cal.Rptr.2d 734, 968 P.2d 445.) In extending the rationale of Tyrell J. to adult parole searches, the Supreme Court stated:
"We think the Attorney General offers the better argument. The `logic of Tyrell J. applies equally, if not more so, *208 to parolees.' Because of society's interest both in assuring the parolee corrects his behavior and in protecting its citizens against dangerous criminals, a search pursuant to a parole condition, without reasonable suspicion, does not `intrude on a reasonable expectation of privacy, that is, an expectation that society is willing to recognize as legitimate.' [Citation.] We agree. [¶] ... [¶] The rationale of Tyrell J. can be stated succinctly. When involuntary search conditions are properly imposed, reasonable suspicion is no longer a prerequisite to conducting a search of the subject's person or property. Such a search is reasonable within the meaning of the Fourth Amendment as long as it is not arbitrary, capricious or harassing. Tyrell J.'s reasoning applies with equal force to adults. In both cases the expectation of privacy is already reduced by the absence of the warrant requirement. As a convicted felon still subject to the Department of Corrections, a parolee has conditional freedomgranted for the specific purpose of monitoring his transition from inmate to free citizen. The state has a duty not only to assess the efficacy of its rehabilitative efforts but to protect the public, and the importance of the latter interest justifies the imposition of a warrantless search condition." (Reyes, supra, 19 Cal.4th at pp. 751-752, 80 Cal.Rptr.2d 734, 968 P.2d 445.)
Based on the holdings in Bravo, Reyes and Tyrell J., we cannot fault the magistrate for having concluded that prior knowledge of defendant's probation status and its associated search condition was not required to validate the search of the apartment. (See People v. Lewis, supra, 74 Cal.App.4th at p. 668, 88 Cal.Rptr.2d 231.) However, in Reyes, the searching officers were aware of Reyes' parole status and search condition, and Tyrell J. concerned a search of Tyrell's person, not his residence. In Martinez, the search was of a residence for police investigation of suspected criminal activity, not parole violations. Further, at the time of the search the officers were unaware of Martinez's parole status. Similar factors recently caused the California Supreme Court in Robles to invalidate a search of a residential garage. The turn taken by the court in Robles "illustrate[s] what a moveable feast the Fourth Amendment can be." (Reyes, supra, 19 Cal.4th at p. 748, 80 Cal.Rptr.2d 734, 968 P.2d 445.)
In Robles, the police searched the defendant's residential garage without a warrant. Later, the police discovered that defendant's brother, a cohabitant of the residence, was on probation and subject to a probation search. When defendant made a motion to suppress the evidence, the People sought to validate the search as a probation search after the fact, relying on Tyrell J. and People v. Woods (1999) 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019 (Woods) [common authority theory of consent applies to cohabitant regarding shared areas of a residence based on the probationer's advance consent]. The court declined to extend Tyrell J. and Woods to validate the search.
The court began by stating the general rules relating to searches of residences.
"`[P]rivate residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable.' [Citations.] Likewise, a garage that is attached or adjacent to a home may give rise to a legitimate expectation of privacy therein. [Citations.] Under the Fourth Amendment, a warrantless search of such an area is unreasonable *209 per se unless it falls within a recognized exception to the warrant requirement, for example, where consent to the search has been given. [Citations.]" (Robles, supra, 23 Cal.4th at p. 795, 97 Cal.Rptr.2d 914, 3 P.3d 311.)
The court then distinguished Woods, as follows:
"In People v. Woods, supra, 21 Cal.4th 668 [88 Cal.Rptr.2d 88, 981 P.2d 1019], two persons who resided with a probationer challenged the constitutionality of a warrantless search of their home by a police officer who relied on the authority of a known search clause to seek incriminating evidence against another party residing in the home. (21 Cal.4th at pp. 672-673 [88 Cal.Rptr.2d 88, 981 P.2d 1019].) In evaluating the legality of the search, we found it appropriate to apply an objective standard. In the context of probation searches, we explained, the question is whether the circumstances, viewed objectively, show a proper probationary justification for an officer's search; if they do, then the officer's subjective motivations with respect to a third party resident do not render the search invalid. [Citations.] We concluded there that, regardless of the searching officer's ulterior motives, the circumstances presented ample justification for a search pursuant to the probation clause at issue because the facts known to the officer showed a possible probation violation. [Citation.]
"Contrary to the People's argument, People v. Woods, supra, 21 Cal.4th 668 [88 Cal.Rptr.2d 88, 981 P.2d 1019], does not support the proposition that police officers may lawfully enter a residential premises, without a warrant and without any awareness of a resident's probation search condition, to indiscriminately search for and seize evidence of suspected criminal wrongdoing...." ((Robles, supra, 23 Cal.4th at pp. 796-797, 97 Cal.Rptr.2d 914, 3 P.3d 311, fn. omitted.))
Next, the court refused to extend the logic of Tyrell J. on two grounds. The first pertained to the reasonable expectation of privacy of a cohabitant.
"The logic of Tyrell J. cannot be stretched to vitiate the illegality of the police action here. Even though a person subject to a search condition has a severely diminished expectation of privacy over his or her person and property, there is no doubt that those who reside with such a person enjoy measurably greater privacy expectations in the eyes of society. For example, those who live with a probationer maintain normal expectations of privacy over their persons. In addition, they retain valid privacy expectations in residential areas subject to their exclusive access or control, so long as there is no basis for officers to reasonably believe the probationer has authority over those areas. [Citations.] That persons under the same roof may legitimately harbor differing expectations of privacy is consistent with the principle that one's ability to claim the protection of the Fourth Amendment depends upon the reasonableness of his or her individual expectations. [Citations.]
"It is true that if persons live with a probationer, common or shared areas of their residence may be searched by officers aware of an applicable search condition. [Citations.] Critically, however, cohabitants need not anticipate that officers with no knowledge of the probationer's existence or search condition may freely invade their residence in the absence of a warrant or exigent circumstances. Thus, while cohabitants have no cause to complain of searches that are reasonably and objectively related to the purposes of probationfor example, *210 when routine monitoring occurs [citation] or when facts known to the police indicate a possible probation violation that would justify action pursuant to a known search clause [citation]they may legitimately challenge those searches that are not. Tyrell J., which focused specifically on the reasonableness of a probationer's privacy expectations, does not indicate otherwise." (Robles, supra, 23 Cal.4th at pp. 798-799, 97 Cal.Rptr.2d 914, 3 P.3d 311, fn. omitted.)
Under this analysis, defendant's probation status cannot be used to validate the search with regard to co-defendant Akopoff, as the magistrate correctly ruled. Akopoff had a reasonable expectation of privacy in his residence. Further, the search was not conducted pursuant to a known search clause, and was not motivated by rehabilitative, reformative or legitimate law enforcement or probation purposes.
The question of whether the same result follows for defendant is not clear since this rationale does not apply to him. However, we conclude the search may not be validated as a probation search after the fact with respect to defendant either. We first consider the fact the search involved defendant's residence instead of his person, which was the case in Tyrell J. In Robles, the court considered this circumstance significant.
"Finally, we observe the principal purpose of the exclusionary rule `is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.'" [Citations.] In Tyrell J., we concluded that dispensing with a strict `knowledge-first' rule would not encourage law enforcement officials to engage in warrantless searches of juveniles because they would be `[taking] the chance' that if the target of a search is not subject to a search condition, any contraband found will be inadmissible in court. [Citation.] Although police officers therefore have sufficient incentive to avoid an improper search of a person (ibid.), residential searches present an altogether different situation.
"Notably, residences frequently are occupied by several people living together, including immediate family members and perhaps other relatives or friends, as well as guests. Allowing the People to validate a warrantless residential search, after the fact, by means of showing a sufficient connection between the residence and any one of a number of occupants who happens to be subject to a search clause, would encourage the police to engage in facially invalid searches with increased odds that a justification could be found later. It also would create a significant potential for abuse since the police, in effect, would be conducting searches with no perceived boundaries, limitations, or justification. [Citation.] The potential for abuse, with its consequent impact on the citizenry, is especially heightened in high crime areas where police might suspect probationers to live. Thus, while society generally has an interest in having all probative evidence before the court, in circumstances such as these a knowledge-first requirement is appropriate to deter future police misconduct and to effectuate the Fourth Amendment's guarantee against unreasonable searches and seizures. [Citation.]" (Robles, supra, 23 Cal.4th at pp. 799-800, 97 Cal.Rptr.2d 914, 3 P.3d 311.)
In light of the potential for abuse, having all probative evidence before the court is outweighed by the societal interest in preserving the privacy and sanctity of our homes. The Robles rationale applies *211 equally here. It discourages warrantless, suspicionless searches of homes if officers know that any incriminating evidence cannot simply be pinned on a resident later discovered to be subject to parole or probation searches. For example, in this case, Akopoff was able to assert his Fourth Amendment rights in his criminal case by urging suppression of the drugs found in the apartment. Here, the police conduct is no different with respect to defendant. Allowing the evidence to be used in a criminal case against him solely because of his probation status encourages this type of conduct. The end result is that while non-parolee/probation residents may ultimately vindicate their Fourth Amendment rights, they will still be forced to endure warrantless, suspicionless searches of their homes because someone in the home may be on probation or parole. This result defeats the principal purpose of the exclusionary rule, which is to deter future unlawful police conduct. As a result, defendant had a legitimate (though limited) subjective expectation of privacy in his home, and the government's intrusion infringed upon the personal and societal values protected by the Fourth Amendment. (Robles, 23 Cal.4th at p. 800, 97 Cal.Rptr.2d 914, 3 P.3d 311; Tyrell J., 8 Cal.4th at pp. 83-84, 32 Cal.Rptr.2d 33, 876 P.2d 519.) As stated in Minnesota v. Carter (1998) 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373, "the Fourth Amendment is a personal right that must be invoked by an individual.... But the extent to which the Fourth Amendment protects people may depend upon where those people are...."
We conclude that while Bravo significantly narrowed legitimate privacy rights of probationers, it did not completely eliminate them. (Bravo, supra, 43 Cal.3d at pp. 610-611, 238 Cal.Rptr. 282, 738 P.2d 336.) Thus, the issue is not defendant's waiver of the right to object to the police conduct. Instead, the question is whether the police conduct was reasonable when applied to his legitimate, though limited, expectation of privacy.
We keep in mind that after Bravo, the standard for warrantless searches of probationers is no longer the reasonable suspicion standard. (Bravo, supra, 43 Cal.3d at pp. 610-611, 238 Cal.Rptr. 282, 738 P.2d 336.) However, this does not mean probation searches may be conducted for "reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes." (Id. at p. 610, 238 Cal.Rptr. 282, 738 P.2d 336.) Rather, "searches undertaken for harassment or searches for arbitrary or capricious reasons" are not permitted. (Ibid.)
Similarly, Reyes struck a new balance between individual interest and government necessity. The standard adopted in Reyes is that parole searches (1) not be at an unreasonable hour; (2) not be unreasonably prolonged; or (3) not be for other reasons establishing arbitrary or oppressive conduct by the searching officer. (Reyes, 19 Cal.4th at pp. 753-754, 80 Cal. Rptr.2d 734, 968 P.2d 445.) In explaining the third reasonableness category, the court noted that "a search is arbitrary and capricious when the motivation for the search is unrelated to rehabilitative, reformative or legitimate law enforcement purposes, or when the search is motivated by animosity toward the parolee [by law enforcement officers or] ... at their whim or caprice ...." (Id. at p. 754, 80 Cal.Rptr.2d 734, 968 P.2d 445.)
Robles held the search of a particular residence cannot be reasonably related to a proper probation purpose when the officers involved do not even know of a probationer connected to the residence.

*212 "As our decisions indicate, searches that are undertaken pursuant to a probationer's advance consent must be reasonably related to the purposes of probation. [Citations.] Significantly, a search of a particular residence cannot be `reasonably related' to a probationary purpose when the officers involved do not even know of a probationer who is sufficiently connected to the residence. Moreover, if officers lack knowledge of a probationer's advance consent when they search the residence, their actions are wholly arbitrary in the sense that they search without legal justification and without any perceived limits to their authority. [Citations.]" (Robles, supra, 23 Cal.4th at 797, 97 Cal.Rptr.2d 914, 3 P.3d 311.)
Although Robles involved a non-probationer resident, there is no reason why its rationale should not apply to defendant, a home occupant on probation.
To be sure, our Supreme Court has provided mixed signals in the way it has resolved Tyrell J., Reyes, Woods and Robles. We agree with the court in People v. Lewis, supra, 74 Cal.App.4th at page 668, 88 Cal.Rptr.2d 231, that Martinez's legal premise has been undermined. We disagree, however, that the holding in Martinez can no longer be regarded as controlling. Robles has limited "[t]he logic of Tyrell J." (Robles, supra, 23 Cal.4th at p. 798, 97 Cal.Rptr.2d 914, 3 P.3d 311), which had limited the rationale of Martinez. (Tyrell J., supra, 8 Cal.4th at pp. 88-89, 32 Cal.Rptr.2d 33, 876 P.2d 519.) At this juncture, Martinez and Robles require "knowledge first" to validate a residential search based on a search condition. In this respect, we disagree with our dissenting colleague. Because the Martinez case was distinguished in Tyrell J. and not overruled, it remains binding authority on this court. Coupled with the court's most recent discussion of Fourth Amendment principles and holding in Robles, we conclude a probationer defendant retains a limited expectation of privacy to be free from warrantless, arbitrary searches of his or her residence. Whether the probationer is a sole occupant of the residence or resides with a non-probationer occupant is irrelevant to the probationer's ability to assert his or her own limited privacy rights. Since Robles was not held by the court to be a break from past precedent but simply a refusal to stretch Tyrell J. `s logic, there is no reason to deny defendant the benefit of Robles's holding.
Therefore, we find the magistrate unforeseeably erred by relying on defendant's probation status for denying defendant's motion to suppress. In light of this conclusion, it is unnecessary to determine whether revocation of defendant's probation restored his Fourth Amendment rights.[7]
Based on our conclusion, this case is remanded to the trial court for the limited purpose of a new motion to suppress hearing. Since the motion was not renewed, the prosecution must be afforded the opportunity to relitigate it. The only theory of justification presented in the original motion to suppress was defendant's probation search condition. Although, respondent argues any error in denying the motion was harmless because of the doctrines of exigent circumstances and plain view, the record is insufficiently developed to uphold the admissibility of all the evidence under these theories.

DISPOSITION
The petition for writ of habeas corpus is denied. The matter is remanded for a *213 new hearing on defendant's motion to suppress. If the court denies the motion, it may simply reinstate the judgment. If the motion to suppress is granted in whole or in part, the court must determine whether exclusion of the evidence makes it reasonably probable defendant would receive a more favorable result in a new trial. If so, the court shall order a new trial on those charges affected by the excluded evidence.
I CONCUR: CORNELL, J.
Dissenting Opinion of DIBIASO, Acting P.J.
The pertinent issue in People v. Robles (2000) 23 Cal.4th 789, 97 Cal.Rptr.2d 914, 3 P.3d 311 (Robles) was whether "the probation search condition of [the] defendant's brother [can] be used to validate [a] warrantless search of [a home]" which turned up evidence incriminating the defendant, who was a co-resident of the property and who was not a probationer subject to a search condition, "where the police did not know of the condition at the time of the search." (Id. at p. 794, 97 Cal.Rptr.2d 914, 3 P.3d 311.) The court ultimately answered the question in the negative. The issue here is whether the probation search condition of defendant can be used to validate a warrantless search of a home which turned up evidence incriminating defendant, who was a probationer subject to a search condition, where the police did not know of the condition at the time of the search. Notwithstanding certain language in Robles, I have concluded the answer to this question should be in the affirmative under the rationale of In re Tyrell J. (1994) 8 Cal.4th 68, 32 Cal.Rptr.2d 33, 876 P.2d 519 (Tyrell J.), because the situation here is not the situation addressed by Robles but rather is a situation covered by "the logic" (Robles, at p. 798) of Tyrell J.
Tyrell J. holds that a juvenile probationer subject to a search condition has a "severely diminished expectation of privacy over his or her person and property" (Robles, supra, 23 Cal.4th at p. 798, 97 Cal.Rptr.2d 914, 3 P.3d 311, italics added; Tyrell J., supra, 8 Cal.4th at pp. 74, 89, 32 Cal.Rptr.2d 33, 876 P.2d 519["[O]ne must first have a reasonable expectation of privacy before there can be a Fourth Amendment violation."], emphasis added) and therefore, it would seem, a probation search condition can validate a warrantless search of the property of a defendant who was a probationer subject to a search condition, even if the police did not know of the condition at the time of the search. (See Tyrell J., at pp. 73-74, 32 Cal.Rptr.2d 33, 876 P.2d 519.)[1] Some text in Robles appears to agree, for it states, in discussing and quoting from Tyrell J., that a juvenile probationer subject to a search condition must expect that an authorized official "`could at any time stop [the probationer] on the street, at school, or even enter his home, and ask that'" he or she submit to a warrantless search. (Robles, at p. 798, emphasis added; see Tyrell J., at p. 86, 32 Cal.Rptr.2d 33, 876 P.2d 519.)
Moreover, there is text in Robles which suggests it applies only to searches sought to be validated by an unknown search condition imposed upon a joint resident of the property who is not the defendant because probationers and non-probationers harbor different expectations of privacy. For example, at one point the Robles court distinguished non-probationers who reside with "a person subject to a search condition" and who therefore "enjoy measurably *214 greater privacy expectations in the eyes of society" than a person subject to a search condition. (Robles, supra, 23 Cal.4th at p. 798, 97 Cal.Rptr.2d 914, 3 P.3d 311.) At another, the Robles court noted that the "logic" of Tyrell J. did not extend to Robles because Tyrell J. "focused specifically on the reasonableness of a probationer's privacy expectations" (Robles, at p. 799) and the police conduct in issue in Robles transgressed the "reasonable expectations of privacy under the Fourth Amendment" of the nonprobationer (Robles, at p. 800).
To be sure, there is other text in Robles which suggests it applies equally to searches sought to be validated by an unknown search condition imposed upon a joint resident of property who is the defendant because residential searches are different than personal searches, such that the lesser expectation of privacy held by a probationer who jointly controls the property with a nonprobationer is subordinate to the "principal purpose of the exclusionary rule," which is to "`"deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment."'" (Robles, supra, 23 Cal.4th at p. 799, 97 Cal.Rptr.2d 914, 3 P.3d 311.) Thus, as pointed out in Justice Wiseman's opinion here, Robles states in part that:

"residential searches present an altogether different situation'" than the search of a person because "residences frequently are occupied by several people living together.... Allowing the People to validate a warrantless residential search, after the fact, by means of showing a sufficient connection between the residence and any one of a number of occupants who happens to be subject to a search clause, would encourage the police to engage in facially invalid searches with increased odds that a justification could be found later. It also would create a significant potential for abuse since the police, in effect, would be conducting searches with no perceived boundaries, limitations, or justification .... Thus, while society generally has an interest in having all probative evidence before the court, in circumstances such as these a knowledge-first requirement is appropriate to deter future police misconduct and to effectuate the Fourth Amendment's guarantee against unreasonable searches and seizures." (Robles, supra, 23 Cal.4th at p. 800, 97 Cal.Rptr.2d 914, 3 P.3d 311; emphasis added.)
Reduced to basics, either Tyrell J. must be limitedto nonresidential searches (except perhaps a residence under a defendant/probationer's sole control), such as a search of a defendant/probationer's personor Robles must be limitedto searches of a residence jointly controlled by a probationer and a defendant/nonprobationer. There is nothing directly stated in Robles which unmistakably discloses whether the Supreme Court intended to so distinguish the latter from the former by the reference to "circumstances such as these" (Robles, supra, 23 Cal.4th at p. 800, 97 Cal.Rptr.2d 914, 3 P.3d 311, emphasis added). My colleagues have effectively concluded that the limit should be put on Tyrell J., and they may be right.
For my part, however, my instincts tell me that the Supreme Court did not mean to give Robles such a broad effect. Robles does not say that Tyrell J. is to be limited to nonresidential or single occupant residential searches; it says instead only that the "logic" of Tyrell J. does not apply to "vitiate the illegality of the police action" in Robles. (Robles, supra, 23 Cal.4th at p. 798, 97 Cal.Rptr.2d 914, 3 P.3d 311.) The ratio decidendi of Robles is determined by comparing the language of the opinion with the facts giving rise to the case. (People v. Superior Court (Moore) (1996) *215 50 Cal.App.4th 1202, 1212, 58 Cal.Rptr.2d 205; Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1157, 278 Cal. Rptr. 614, 805 P.2d 873; see generally 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 945 et seq., p. 986 et seq.) The "police action" in Robles was not a search that resulted in evidence incriminating a probationer, as it was in Tyrell J. and as it is in the instant case.
If Robles does apply to the facts here, then a savvy probationer could secure some relief from the impact of Tyrell J. by simply getting a nonprobationer roommate. I cannot believe the Robles court intended this result.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts T and II.
[1] Except as otherwise indicated, all statutory references are to the Penal Code.
[2] Zuniga testified to the findings of Officer Scott Yamaguchi, who tested three bags of powdery white substance. Tests on the first bag weighing 44.8 grams and found on the table in the bedroom were inconclusive. Tests on the second bag weighing one gram found in the tackle box were also inconclusive. A third bag weighing 10.5 grams and also found in the tackle box tested positive for amphetamine. It was also determined that a substance weighing 23.5 grams was marijuana.
[**] See footnote *, ante.
[6] The defendant was arrested outside his home, his home was searched without a search warrant, and narcotics were found.
[7] The request to file the agreed settled statement in this court also is denied. The settled statement pertains to the question of defendant's probation status at the time of the search, an issue we find is unnecessary to address.
[1] Tyrell J. involved a juvenile probationer; its rationale was applied to adult parolees in People v. Reyes (1998) 19 Cal.4th 743, 752, 80 Cal.Rptr.2d 734, 968 P.2d 445. Robles involved an adult probationer.