Filed 11/25/19; Opinion following transfer from Supreme Court

## CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SARA ARCELIA SALCIDO,<br><br>        Defendant and Appellant. | E067578<br><br>(Super.Ct.No. INF1501474)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge. Affirmed as modified.

Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Michael Pulos, Britton B. Lacy, and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

---

        *        Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III and IV and footnote 9.

Defendant Sara Salcido was in the business of providing immigration services —typically, obtaining visas for her clients that would allow them to stay in the United States legally.  Under the Immigration Consultant Act (Bus. & Prof. Code, §§ 22440-22449) (Act), with certain exceptions, it is illegal for a person to act as an "immigration consultant" (as defined in the Act) unless he or she has complied with a host of consumer protection requirements, such as passing a background check and filing a bond.  Defendant failed to comply with these.

As a result, in a bench trial, defendant was convicted on one count of unlawfully engaging in the business of an immigration consultant, a misdemeanor.  (Bus. & Prof. Code, §§ 22440, 22441.)  The People argued, however, that each time defendant took money from a client in exchange for providing immigration services, she was committing theft by false pretenses, because she was not a legally qualified immigration consultant under state law.  The trial court agreed; thus, it also convicted her on six counts of grand theft (Pen. Code, §§ 484, 487, subd. (a)) and two counts of petty theft (Pen. Code, §§ 484, 488).  It dismissed two additional counts of grand theft as time-barred.  Defendant was placed on probation for five years.

In the published portion of this opinion, we will hold that federal law does not preempt the application of the Act to defendant.  In the unpublished portion, we will hold that one of defendant's probation conditions must be stricken.  Accordingly, we will first modify and then affirm the judgment.

2

# I

## FACTUAL BACKGROUND

A.    *Count 2:  Rigoberto S.*

In September 2012, Rigoberto S. paid defendant $4,480 to obtain a work permit and some kind of visa.  He had seen an ad saying that she provided immigration services.  He met with her in her office.  However, he never received any documentation from the United States Citizenship and Immigration Services (USCIS) or from defendant.  He contacted defendant, but she had no explanation, so he sued her in small claims court.

Defendant testified that she spent some 14 to 20 hours, across some six months, on Rigoberto S.'s case.  Nine months after he first contacted her, she discovered that he had previously been deported.  She did not file anything with the USCIS, because if she had, he would have been deported automatically.  If she had known he had previously been deported, she would never have taken his case.  She started paying back his money, in installments; by the time of the preliminary hearing, she had repaid $1,800.

B.    *Count 3:  Patricia F.*

In October 2011, Patricia F. paid defendant $3,000 to obtain a U visa.[1]  They met at defendant's office.

Defendant testified that she put in 50 hours on the case.  It took her over a year to get the necessary signature from the relevant police department.  She never actually filed

---

[1]    A U visa is available to victims of certain crimes.

3

anything for Patricia F. because Patricia F. saw "a lot of . . . bad comments on Facebook" and fired her.

### C.      *Count 4:  Ivonne G.*

In June or July 2013, Ivonne G. paid defendant $3,000 to obtain a U visa.  She had seen an ad for defendant's immigration services.  They met at defendant's office.

Defendant testified that she had worked on Ivonne G.'s case for about a year and had done "some forms" when she was arrested.

### D.      *Count 6:  Araceli C.*

In April 2014, Araceli C. paid defendant a down payment to help her obtain a green card based on marriage to a United States citizen.  Over time, she paid defendant a total of $9,265.  On defendant's advice, she divorced her husband and married her live-in boyfriend; defendant handled this paperwork.  She learned from the USCIS, however, that defendant had done nothing about the green card.

Defendant testified that she spent 60 hours on the case before Araceli C. fired her.

### E.      *Count 7:  Sofia L.*

In 2012, Sofia L. paid defendant a down payment to obtain U visas for herself and her children.  She met with defendant at defendant's office.  Over time, she paid defendant a total of $5,760.  The USCIS determined that she did not qualify and that it was going to deny her petition; as of the preliminary hearing, however, it had not actually done so, due to its backlog.

Defendant testified that she had spent 300 hours on the case.

F.     *Count 8:  Javier O.*

In 2014, Javier O. paid defendant $4,580 to assist him with obtaining a work permit.  He met with her at her office.  He never received any documentation indicating that she had done anything.

Defendant testified that she spent 30 hours on his case.  She filed some paperwork with the USCIS and spoke to a USCIS supervisor.

G.     *Count 9:  Maria T.*

In 2014, Maria T. paid defendant a down payment to assist her in obtaining a U visa or similar permit.  She had seen an ad for defendant's immigration services.  She met with defendant at defendant's office.  Over time, she paid defendant a total of $800.

Defendant testified that she spent 20 hours on the case.  She obtained the necessary signature of the relevant police department and filed some papers with the USCIS.  The case was still pending.  However, Maria T. fired her and sued her in small claims court.

H.     *Count 10:  Ilsia M.*

At the end of 2014 or the beginning of 2015, Ilsia M. paid defendant $300 to assist her in obtaining a U visa.  She never received any documentation from the government.

Defendant testified that she spent four to six hours on the case.  She prepared some forms, but she could not send them in because she was arrested.

5

I.       *Additional Information Relevant to All Counts*

Defendant maintained an office in Cathedral City.  Signs outside advertised the services that she provided, including immigration services.

Defendant admitted that she had been acting as an immigration consultant since 2007.  She also admitted that she was not an attorney, though she was a paralegal.  She admitted knowing that she was required to have a background check and to post a bond, but she had not done either.

Defendant testified that she learned in either September or November 2013 that she was required to be registered with the state and to post a bond.  (At the preliminary hearing, however, she testified that she did not know about the background check until 2015.)  She did not post a bond because she could not afford it.

It was stipulated that, at all relevant times, defendant engaged in the business or acted in the capacity of an immigration consultant, for compensation, even though she had not passed the required background check or posted the required bond.  It was also stipulated that, at all relevant times, defendant held herself out as legally authorized to act as an immigration consultant.  With respect to the last two victims — Maria T. and Ilsia M. — it was additionally stipulated that defendant knew at the time that she had failed to comply with the Act.

Finally, it was stipulated that defendant received compensation greater than $950 in connection with the grand theft counts, and less than $950 in connection with the petty theft counts.

6

II

FEDERAL PREEMPTION

Defendant contends that the Act is preempted by federal law.  She demurred to the complaint on this ground.  In any event, federal preemption can be raised for the first time on appeal.  (*Town of Atherton v. California High-Speed Rail Authority* (2014) 228 Cal.App.4th 314, 331.)

"We apply a de novo standard of review . . . because federal preemption presents a pure question of law [citation]."  (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10.)

A.      *General Preemption Principles*.

"'''The supremacy clause of the United States Constitution . . . vests Congress with the power to preempt state law."  [Citations.]  Similarly, federal agencies, acting pursuant to authorization from Congress, can issue regulations that override state requirements.  [Citations.]  Preemption is foremost a question of congressional intent:  did Congress, expressly or implicitly, seek to displace state law?'  [Citation.]"  (*Solus Industrial Innovations, LLC v. Superior Court* (2018) 4 Cal.5th 316, 331.)

Our Supreme Court has "identified several species of preemption."  (*Solus Industrial Innovations, LLC v. Superior Court*, *supra*, 4 Cal.5th at p. 332.)  "Express preemption occurs when Congress defines the extent to which its enactments preempt state law.  [Citation.]  Conflict preemption is found when it is impossible to comply with both state and federal law simultaneously.  [Citation.]  Obstacle preemption occurs when

7

state law stands as an obstacle to the full accomplishment and execution of congressional objectives.  [Citation.]  Field preemption applies when federal regulation is comprehensive and leaves no room for state regulation.  [Citation.]"  (*People ex rel. Harris v. Pac Anchor Transp., Inc.* (2014) 59 Cal.4th 772, 777-778.)

Ordinarily, there is a presumption against preemption.  (*Solus Industrial Innovations, LLC v. Superior Court*, *supra*, 4 Cal.5th at p. 332.)  "The presumption is founded on 'respect for the States as "independent sovereigns in our federal system"'; that respect requires courts 'to assume that "Congress does not cavalierly pre-empt state-law causes of action."'  [Citation.]  The strength of the presumption is heightened in areas where the subject matter has been the longstanding subject of state regulation in the first instance; where federal law touches 'a field that "'has been traditionally occupied by the States,'"' the party seeking to show preemption 'bear[s] the considerable burden of overcoming "the starting presumption that Congress does not intend to supplant state law."'  [Citations.]"  (*Quesada v. Herb Thyme Farms, Inc.* (2015) 62 Cal.4th 298, 313.)

Defendant argues that this presumption does not apply here, because the Act implicates foreign affairs — an area not traditionally occupied by the states.  (See *Viva! International Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 938-939 & fn. 5 [declining to decide whether presumption applies when state law "touch[es] on matters implicating foreign affairs"].)

We disagree, on the authority of *In re Jose C.* (2009) 45 Cal.4th 534. There, our Supreme Court said: "[T]he general presumption against preemption [citation] . . . applies even in the context of immigration law [citation] . . . ." (*Id.* at p. 551.)

It explained: "The '[p]ower to regulate immigration is unquestionably exclusively a federal power.' [Citations.] . . .

"While the immigration power is exclusive, it does not follow that any and all state regulations touching on aliens are preempted. [Citations.] Only if the state statute is in fact a 'regulation of immigration,' i.e., 'a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain' [citation], is preemption structural and automatic. Otherwise, the usual rules of statutory preemption analysis apply; state law will be displaced only when affirmative congressional action compels the conclusion it must be. [Citation.]" (*In re Jose C.*, *supra*, 45 Cal.4th at p. 550; see also *DeCanas v. Bica* (1976) 424 U.S. 351, 354-355.)

Here, the specification of who may provide immigration-related services, while undoubtedly a matter of federal interest and a proper subject of federal regulation, does not "regulate[] who may enter or remain in the United States." (See *In re Jose C.*, *supra*, 45 Cal.4th at p. 550.) At the same time, "[t]he states' historic police powers include the regulation of consumer protection . . . . [Citations.]" (*Gibson v. World Savings & Loan*

9

*Assn.* (2002) 103 Cal.App.4th 1291, 1300.)  Accordingly, the presumption against preemption applies fully here.[2]

B.      *Relevant Federal Law*.

Congress has authorized the Secretary of Homeland Security to "establish such regulations . . . as he deems necessary for carrying out his authority . . . ."  (8 U.S.C. § 1103(a)(3).)  Pursuant to this authorization, the Department of Homeland Security (DHS) has adopted a set of regulations specifying who can provide representation before the United States Citizen and Immigration Services (USCIS).  (8 C.F.R. §§ 1.1, 1.2, 292.1 (2018).)[3]

Under these regulations, "representation" is defined as including both "practice" and "preparation."  (8 C.F.R. § 1.2 (2018).)

---

[2]      We note, however, that the presumption is not crucial to our analysis; even without it, we would come to the same conclusions, for the same reasons.

[3]      A virtually identical set of regulations specifies who can provide representation before the Executive Office for Immigration Review (EOIR).  (8 C.F.R. §§ 1001.1(c), (e), (m), 1292.1; see generally Careen Shannon, *Regulating Immigration Legal Service Providers: Inadequate Representation and Notario Fraud* (2009) 78 Fordham L. Rev. 577, 602, fn. 119.)

Generally speaking, representation before the USCIS relates to applications for admission or continued presence, such as visas, whereas representation before the EOIR relates to removal proceedings.  (Lee, Congressional Research Service, *Legal Ethics in Immigration Matters* (2009) at p. 1, fns. omitted, available at <https://www.americanbar.org/content/dam/aba/administrative/immigration/fightnotariofraud/crs_lega_ethics_in_immigration_matters.authcheckdam.pdf>, as of Nov. 25, 2019.)  As there is no evidence that defendant was involved in removal proceedings, we focus on representation before the USCIS.

10

"Practice" means "appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with DHS." (8 C.F.R. § 1.2 (2018).)

"Preparation," as relevant here, means "the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities, including the incidental preparation of papers . . . ." (8 C.F.R. § 1.2 (2018).) However, preparation does *not* include "service consisting solely of assistance in the completion of blank spaces on printed DHS forms, by one whose remuneration, if any, is nominal and who does not hold himself or herself out as qualified in legal matters or in immigration and naturalization procedure." (*Ibid.*)

"Case" means "any proceeding arising under any immigration or naturalization law, Executive Order, or Presidential proclamation, or preparation for or incident to such proceeding, including preliminary steps by any private person or corporation preliminary to the filing of the application or petition by which any proceeding under the jurisdiction of the Service or the Board is initiated." (8 C.F.R. § 1.2 (2018).)

In broad general outline, only five classes of people are authorized to provide "representation": (1) attorneys in good standing; (2) law students, provided they are under the supervision of an attorney and do not receive compensation; (3) "reputable individuals," who are of good moral character, provided they have a preexisting relationship with the client and do not receive compensation; (4) "accredited representatives," who have been authorized by the EOIR; and (5) "accredited officials" of

11

the client's foreign government.  (8 C.F.R. § 292.1(a), (e); see also 8 C.F.R. § 1.2 [defining attorney].)  We will refer to a member of any of these five classes as a "federally authorized person" and to a nonmember as a "federally unauthorized person."

C.     *Relevant State Law*.

The Act provides:  "It is unlawful for any person, for compensation, other than persons authorized to practice law or authorized by federal law to represent persons before the Board of Immigration Appeals or the United States Citizenship and Immigration Services, to engage in the business or act in the capacity of an immigration consultant within this state *except as provided by this chapter*."  (Bus. & Prof. Code, § 22440,  italics added.)

"A person engages in the business or acts in the capacity of an immigration consultant when that person gives nonlegal assistance or advice on an immigration matter."  (Bus. & Prof. Code, § 22441, subd. (a).)

"Immigration matter," as relevant here, means "any proceeding, filing, or action affecting the immigration or citizenship status of any person which arises under immigration and naturalization law, executive order or presidential proclamation, or action of the United States Citizenship and Immigration Services . . . ."  (Bus. & Prof. Code, § 22441, subd. (b).)

"Nonlegal assistance or advice" includes:

"(1)  Completing a form provided by a federal or state agency but not advising a person as to their answers on those forms.

"(2)  Translating a person's answers to questions posed in those forms.

"(3)  Securing for a person supporting documents, such as birth certificates, which may be necessary to complete those forms.

"(4)  Submitting completed forms on a person's behalf and at their request to the United States Citizenship and Immigration Services.

"(5)  Making referrals to persons who could undertake legal representation activities for a person in an immigration matter."  (Bus. & Prof. Code, § 22441, subd. (a).)

We will use "immigration consultant" as shorthand for a person who engages in the business or acts in the capacity of an immigration consultant, according to these definitions.

An immigration consultant must pass a background check (Bus. & Prof. Code, §§ 22441.1, subd. (a), 22442.4), provide clients with a written contract, in English and in the client's native language, containing specified terms (Bus. & Prof. Code, § 22442, subds. (a)-(f)), give clients 72 hours to rescind the contract (Bus. & Prof. Code, § 22442, subd. (f)), give clients signed receipts and regular account statements (Bus. & Prof. Code, § 22442.1), provide specified disclosures (Bus. & Prof. Code, §§ 22442.2, 22444, subd. (d)), maintain a client trust account (Bus. & Prof. Code, § 22442.5), follow specified document provision and retention procedures (Bus. & Prof. Code, § 22443), and file a bond (Bus. & Prof. Code, § 22443.1, subds. (a)-(d)).  A violation of the Act is subject to

both civil (Bus. & Prof. Code, §§ 22445, subd. (a), 22446.5) and criminal penalties. (Bus. & Prof. Code, § 22445, subds. (b)-(c).)

The Act also makes it unlawful for an immigration consultant (defined, in part, as one who gives *nonlegal* assistance or advice) to offer *legal* assistance or advice in an immigration matter. (Bus. & Prof. Code, § 22441, subd. (d).)

D.      *Interaction of Federal and State Law*.

1.      *Conflict preemption*.

Salcido asserts that acting as an "immigration consultant" under California law overlaps with "representation" under federal law. She concludes that California law permits what federal law prohibits — namely, it permits federally unauthorized persons (if they comply with California's stringent requirements) to provide "representation".

"Representation" under federal law largely involves the provision of *legal* services. By contrast, acting as an "immigration consultant" under the Act largely involves the provision of *nonlegal* services.[4] Nevertheless, we may assume, without

---

[4]      At one point, we called for further briefing on whether there was sufficient evidence that defendant provided any *nonlegal* assistance or advice. The testimony at trial seemed to portray her as providing *legal* advice and assistance — for example, about the particular visa that a client might be qualified for and about how to obtain that visa. If that was all she did, it would seem that she was simply not guilty.

As the parties pointed out, however, defendant *stipulated* that she was an immigration consultant. This necessarily meant that she provided nonlegal assistance and advice (even if she also provided legal assistance and advice). Indeed, it is possible that the People refrained from presenting additional evidence that she provided nonlegal assistance and advice precisely *because* they were relying on this stipulation.

14

deciding, that there are some areas of overlap. (See Moore, *Fraud, the Unauthorized Practice of Law and Unmet Needs: A Look at State Laws Regulating Immigration Assistants* (2004) 19 Geo. Immig. L.J. 1, 18-19 [concluding that "preparation" includes filling out forms by one who charges more than a nominal fee and/or holds him or herself out as an immigration specialist, and therefore state laws permitting federally unauthorized persons to fill out forms are preempted].)

This is essentially a conflict preemption argument. However, there is no conflict, because it is possible to comply with both state and federal law simultaneously.

In *Hyland v. Fukuda* (9th Cir. 1978) 580 F.2d 977, Hawaiian state law prohibited a convicted felon from possessing a firearm, but it carved out an exception for a state employee acting in the course of his or her duties. (*Id*. at p. 980.) Federal law, however, flatly prohibited a convicted felon from possessing a firearm under any circumstances. (*Id*. at pp. 979-980.) The appellate court held that this raised no preemption issue, because the state law merely "determines the legality of a certain act under state law, it has no impact on the legality of the same act under federal law. Simply put, Congress has chosen to prohibit an act which Hawaii has chosen not to prohibit . . . ." (*Id*. at p. 981.)

Similarly, in *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, state law generally prohibited the possession, sale, and transportation of marijuana, but it created an exemption, under certain circumstances, when the marijuana was for

15

medical purposes.  (*Id*. at pp. 742-746.)  Federal law, however, flatly prohibited the possession of marijuana, even if for medical purposes.  (*Id*. at pp. 756-757.)

The appellate court held that there was no conflict preemption:  "Conflict preemption exists when 'simultaneous compliance with both state and federal directives is impossible.'  [Citation.] . . .  A claim of positive conflict might gain more traction if the state *required*, instead of merely exempting from state criminal prosecution, individuals to possess, cultivate, transport, possess for sale, or sell medical marijuana in a manner that violated federal law.  But because [state law does not] require such conduct, there is no 'positive conflict' with federal law . . . .  [Citation.]  In short, nothing in either state enactment purports to make it impossible to comply simultaneously with both federal and state law."  (*Qualified Patients Assn. v. City of Anaheim*, *supra*, 187 Cal.App.4th at pp. 758-759.)

Here, California state law does not say that a person who has complied with all of the requirements of the Act *can* fill out forms (which arguably constitutes "representation," at least in some circumstances).  Rather, it says that a person who has *not* complied with all of the requirements of the Act *cannot* fill out forms.  Thus, the Act does not purport to allow anyone to violate federal law.  A person still must be federally authorized in order to provide any kind of "representation."

We accept that a state cannot penalize a nonlawyer who represents a client before a federal agency for the unauthorized practice of law, when the representation is authorized by federal law. (*Sperry v. Florida* (1963) 373 U.S. 379, 385.)  Here, however,

16

the state seeks to penalize a nonlawyer for acts that, even if they were "representation," were *not* authorized by federal law.

There is no conflict, and thus there is no conflict preemption.

2.      *Obstacle preemption.*

Defendant notes that the DHS has prescribed certain disciplinary penalties for "the unauthorized representation of immigrants"; however, these do not include criminal penalties.  She argues that this reflects a federal choice not to make unauthorized representation a crime, and therefore the Act is preempted.  This is essentially an obstacle preemption argument.

The flaw in this argument is that federal law provides disciplinary penalties only against federally authorized persons, and not against federally unauthorized persons.  It leaves any penalties against the latter up to the states.

"An adjudicating official or the Board of Immigration Appeals . . . may impose disciplinary sanctions against any practitioner . . . ."  (8 C.F.R. § 292.3(a)(1).)  A "practitioner," however, is defined as either an attorney or a federally authorized person. (8 C.F.R. §§ 1.2, 292.3(a)(2); see also 8 C.F.R. § 292.3(a)(1) [providing for sanctions against "a practitioner who is authorized to practice before DHS"].)  Thus, the listed grounds for discipline, while not exclusive, do not include representation by a federally unauthorized person.  (8 C.F.R. § 292.3(b), incorporating 8 C.F.R. § 1003.102.)  The omission is highlighted by the fact that they *do* include *assisting* representation by a

17

federally unauthorized person.  (8 C.F.R. § 292.3(b), incorporating 8 C.F.R. § 1003.102(m).)

In 1992, a legal opinion of the Office of the General Counsel of the former Immigration and Naturalization Service (the predecessor of the USCIS) concluded that a state can penalize a federally unauthorized person for engaging in the unauthorized practice of law.  (Office of the General Counsel Opn. No. 92-29, Legal Opinion:  Role of Visa Consultants in the Practice of Immigration Law (June 9, 1992) 1992 WL 1369368 at p. *2.)  It added:  "Whether or not representation by . . . a [federally unauthorized] person in violation of federal immigration regulations also violates state laws can only be determined by applying the statutes and regulations that govern the practice of law in each particular state."  (*Id.* at p. *4.)

Consistent with our analysis, the EOIR's Immigration Court Practice Manual states that its "disciplinary procedures . . . do not apply to non-practitioners engaged in the unauthorized practice of law.  Anyone harmed by an individual practicing law without authorization should contact the appropriate law enforcement or consumer protection agency."  (EOIR, Immigration Court Practice Manual (rev. Aug. 2, 2018) § 10.3(e).[5])  The manual also states:  "Immigration specialists — who include visa consultants and 'notarios' — are not authorized to practice law or appear before the

---

[5]     Available at <https://www.justice.gov/eoir/page/file/1084851/download>, as of Nov. 25, 2019.

18

Immigration Court. These individuals may be violating the law by practicing law without a license." (*Id.*, § 2.7.) This is necessarily a reference to *state* law.[6]

Defendant also points to the EOIR's Fraud and Abuse Prevention Program. (See <https://www.justice.gov/eoir/fraud-and-abuse-prevention-program>, as of Nov. 25, 2019.) "The Fraud Program investigates complaints of fraud, scams, and unauthorized practitioners . . . ." (*Ibid.*) However, it also "supports fraud and unauthorized practitioner investigations, prosecutions, and disciplinary proceedings initiated by local [and] state . . . law enforcement and disciplinary authorities." (*Ibid.*) Its website includes a link entitled, "How Do I Report a Scam or an Unauthorized Practitioner to State or Local Officials?" (*ibid.*); when clicked, on it leads to a page indicating that "the unauthorized practice of immigration law" in California is governed by the "Immigration Consultants Act" and should be reported to the state Attorney General or the State Bar. (Report Immigration Scams, <https://www.uscis.gov/avoid-scams/report-scams>, as of Nov. 25, 2019.)

In sum, then, there is a clear federal intent to allow the states to penalize federally unauthorized persons for providing "representation" in immigration matters. And, of course, to the extent that what defendant was doing was *not* "representation," as defined

---

[6] The EOIR's Board of Immigration Appeals Practice Manual (rev. Oct. 16, 2018), available at <https://www.justice.gov/eoir/page/file/1103051/download>, as of Nov. 25, 2019, contains virtually identical provisions. (*Id.*, §§ 2.7, 11.3(a))

by federal law, there was no federal concern whatsoever about state regulation of her conduct.

3. *Field preemption.*

Although defendant mentions field preemption, we do not understand her to be relying on it. All of her arguments turn on the state law being in conflict with, or an obstacle to the accomplishment of the intention of, federal law. If only out of an excess of caution, then, we note that, for the reasons already stated, field preemption also does not apply. The federal regulation is not so comprehensive as to leave no room for state regulation; while it specifies who may (and may not) provide representation before the USCIS, it offers only an incomplete enforcement mechanism. Moreover, there are ample indicia of a federal intent to allow for state regulation.

III

THE SUFFICIENCY OF THE EVIDENCE OF THEFT BY FALSE PRETENSES

Defendant contends that there was insufficient evidence, with respect to (1) reliance by her clients and (2) fraudulent intent, to support her theft convictions.

A. *General Legal Principles.*

"In addressing a claim of insufficient evidence to support a conviction, this court "'reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'" [Citation.] 'We presume every fact in support of the judgment the trier of fact could have

20

reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.]" (*People v. Jackson* (2016) 1 Cal.5th 269, 345.) "[T]he relevant inquiry on appeal is whether, in light of all the evidence, '*any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Zaragoza* (2016) 1 Cal.5th 21, 44.)

In California, the statutory crime of theft can be committed under three distinct theories: (1) larceny, (2) embezzlement, and (3) obtaining property by false pretenses. (*People v. Gonzales* (2017) 2 Cal.5th 858, 864-866.) Defendant did not commit larceny, because she took her clients' money with their consent. (See *id.* at p. 864.) She did not commit embezzlement, because she did not misappropriate money that she lawfully possessed. (*Ibid.*) Rather, the trial court found her guilty on a theory of theft by false pretenses.

"[T]heft by false pretenses . . . requires . . . that '(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation.' [Citation.]" (*People v. Williams* (2013) 57 Cal.4th 776, 787, italics omitted.) Here, the trial court found that defendant made a false representation "by holding herself out as an immigration consultant when she was not qualified to be an immigration consultant." It further found that she knew she was not

21

qualified to be an immigration consultant, and she had the specific intent to obtain money from her clients by deceiving them. Finally, it found that each of the victims "paid money to defendant . . . in reliance upon defendant's representations. . . that she was an immigration consultant." Defendant challenges the latter two findings.

B.    *Reliance*.

""""[T]he express testimony of a victim of false pretense that he was induced to part with his money by the fraudulent statements of the accused is not essential. It is sufficient if the inference of his reliance could have been drawn from all the evidence."" [Citations.]" (*Perry v. Superior Court of Los Angeles County* (1962) 57 Cal.2d 276, 285-286.)

For example, in *People v. Frankfort* (1952) 114 Cal.App.2d 680, the defendants sold parcels of real property, which came with membership in a country club, to various buyers (*id.* at pp. 686-687, 689-691); in the course of doing so, they made false representations about such matters as financing, maintenance fees, the supply of mineral water, and their plans to build a health resort. (*Id.* at pp. 691-692.) Some but not all of the buyers testified that they relied on the misrepresentations. Nevertheless, the appellate court held that the trial court could justifiably infer reliance. (*Id.* at p. 699.) It reversed the convictions on only two counts, in connection with which the particular victim affirmatively testified that he or she did *not* rely. (*Ibid.*)

Here, likewise, the trial court could infer reliance. Defendant agreed to provide specific immigration services to each of the victims; in return, the victims agreed to pay

22

her hundreds or thousands of dollars.  Most of the victims met with her at her office, where she had signs advertising her immigration services.  Some of the victims had also seen ads stating that she provided immigration services.  The conclusion is not only reasonable but compelling that, if the victims had known that she could not legally provide the immigration services that she promised, they would not have paid her.

C.     *Fraudulent Intent*.

The trial court could also reasonably find fraudulent intent.  When an investigator questioned defendant, she admitted knowing that she was required to have a background check and to post a bond, but she had not done so.

In her training to become a paralegal, defendant had studied immigration law.  She also researched immigration law at the library, online, and by talking to immigration officers.  At the preliminary hearing, she testified:

"Q.  . . .  [Y]ou're aware that the State of California requires you to pass a background check, right?

"A.  I didn't know about that until 2015.

"Q.  And you're aware that you're also required to have a $100,000 bond on file; correct?  [¶]  . . .

"[A.]  Yes, I read about that.

"Q.  . . .  You did know that?

"A.  Yes."

Because she carefully specified when she learned about the background check requirement, but she did not specify when she learned about the bond requirement, it is fairly inferable that she knew about the bond requirement at all relevant times.

At trial, she claimed that she did not learn that she needed a bond until September or November 2013. However, this was contradicted by the fact that she apparently did not tell the investigator this. It was further contradicted by her claim at the preliminary hearing that she supposedly did not learn about the background check requirement until 2015.

Defendant nevertheless argues that she did not have fraudulent intent because she could actually do the work that she promised to do for her clients — "the evidence was she assisted many people over many years to legally obtain valid green cards, visas, citizenship etc." The People's response is apt: "Appellant's ability to evade law enforcement prior to the instant case is immaterial . . . ." She may have hoped to get away with acting as an immigration consultant, but at the same time, she knew she might not. However, she did not share this fact with her clients. As a matter of fact, once defendant was arrested, she was unable to complete her open cases.

IV

ELECTRONIC SEARCH CONDITION OF PROBATION

Probation condition 39 requires defendant to "[s]ubmit to immediate search and seizure of computers, memory storage devices, electronic mail, internet accounts, and data and information contained therein; with or without reasonable cause by the probation

officer or law enforcement." Defendant contends that this condition is unreasonable and unconstitutional.**7**

A.      *Forfeiture*.

Preliminarily, the People contend that defendant forfeited this contention by failing to object at sentencing.

"As a rule, failure to object to a probation condition in the trial court on standard state law or reasonableness grounds forfeits the claim for appeal. [Citation.]" (*People v. Moran* (2016) 1 Cal.5th 398, 405, fn. 7.) Defendant also argues, however, alternatively, that her trial counsel's failure to object constituted ineffective assistance of counsel.

"To establish ineffective assistance of counsel, [defendant] must show that her counsel's performance was deficient and that she suffered prejudice from the deficient performance. [Citation.] On direct appeal, if the record '"sheds no light on why counsel acted or failed to act in the manner challenged,"' we must reject the claim '"unless counsel was asked for an explanation and failed to provide one, or unless there simply

---

**7**      In her opening brief, defendant similarly challenged probation conditions 37 and 38, which also related to electronic data. As she now concedes, however, the trial court did not actually impose these conditions.

In a footnote, defendant also challenges a separate probation condition that requires her to "[d]isclose your true identity, including residence address and telephone number, in any advertisement, notice, or offer to sale and/or purchase on the internet." We deem this contention forfeited, because it is not within the scope of any of the headings in her brief, and because it is not supported by any analysis or citation of authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Nguyen* (2013) 212 Cal.App.4th 1311, 1325.)

could be no satisfactory explanation.'"  [Citation.]"  (*People v. Caro* (2019) 7 Cal.5th 463, 488.)

Here, assuming defendant's contention is meritorious, her counsel's failure to object to the probation condition was objectively unreasonable.  As of January 2017, when defendant was sentenced, *In re Ricardo P.* (2015) 193 Cal.Rptr.3d 883, review granted Feb. 17, 2016, had struck down an electronic search condition, and the case was pending in the California Supreme Court.  Thus, while the merits of the issue were unsettled, it was clear that defense counsel needed to object to any electronic search condition in order to preserve the issue.

Moreover, we cannot imagine any satisfactory explanation for this failure.  The challenged condition substantially restricts defendant's privacy.  Perhaps, if defendant were a Luddite who never used a computer, defense counsel might reasonably choose not to object.  The record shows, however, that she had multiple computers.  (See fn. 8, *post*.)

It follows that defense counsel's performance was deficient.  But was it prejudicial?  This turns on whether the challenged probation condition is valid.

B.      *Reasonableness*.

"Consistent with established law, we first address whether the probation condition was permissible under state law before turning to resolve any potential federal constitutional issue posed in the case."  (*People v. Moran*, *supra*, 1 Cal.5th at pp. 401-402, fn. omitted.)

"A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*People v. Lent* (1975) 15 Cal.3d 481, 486.)

"On appeal, '[w]e review conditions of probation for abuse of discretion.' [Citation.] That is, a reviewing court will disturb the trial court's decision to impose a particular condition of probation only if, under all the circumstances, that choice is arbitrary and capricious and is wholly unreasonable. [Citation.]" (*People v. Moran*, *supra*, 1 Cal.5th at p. 403.)

While this appeal was pending, the Supreme Court decided *In re Ricardo P.* (2019) 7 Cal.5th 1113. There, a juvenile probation condition required the minor to submit to warrantless searches of his electronic devices and electronic accounts. (*Id.* at pp. 1116-1117.) The court held that this condition was unreasonable and invalid, because there was no evidence that the minor "had used or will use electronic devices in connection with . . . any illegal activity," and hence, "[t]he probation condition [wa]s not reasonably related to future criminality . . . ." (*Id.* at p. 1116; see also *id.* at p. 1129.)

It conceded that, "[i]n virtually every case, one could hypothesize that monitoring a probationer's electronic devices and social media might deter or prevent future criminal conduct." (*In re Ricardo P.*, *supra*, 7 Cal.5th at p. 1123.) However, it noted "the potentially greater breadth of searches of electronic devices compared to traditional property or residence searches. [Citation.]" (*Id.* at p. 1127.) As a result, "[s]uch a

27

condition significantly burdens privacy interests. [Citations.]" (*Id.* at p. 1123.) The court concluded that "the burden it imposes on Ricardo's privacy is substantially disproportionate to the countervailing interests of furthering his rehabilitation and protecting society." (*Id.* at p. 1119; see also *id.* at p. 1120.)

Except in one respect, this case is on all fours with *Ricardo P.* There was no evidence that defendant's crimes involved computers or the internet.[8] There was no evidence that she had used electronic devices in connection with any uncharged illegal activity. And there was no evidence that she would use electronic devices in connection with any illegal activity in the future.

The only significant distinction is that defendant is an adult, whereas *Ricardo P.* was a juvenile. However, adult probation conditions are, if anything, more narrowly limited than juvenile probation conditions. (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81-82 ["[A] condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court."], overruled on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128, 130.) A fortiori, then, the challenged probation condition in this case is unreasonable and invalid.

---

[8] The police seized computers from defendant but never actually searched them. According to the probation report, defendant obtained clients through television, radio, magazine, and newspaper ads.

28

V

DISPOSITION

The judgment is modified by striking probation condition 39.  (See *In re*

*Ricardo P*., *supra*, 7 Cal.5th at p. 1129.)  The judgment as thus modified is affirmed.[9]

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P. J.

We concur:

McKINSTER
J.

RAPHAEL
J.

---

[9]     The clerk of this court is directed to send a copy of this opinion to the State Bar immediately upon the issuance of the remittitur.  (Bus. & Prof. Code, § 6086.7, subd. (a)(2).)